# United States Court of Appeals
## For the First Circuit

No. 05-2835

UNITED STATES OF AMERICA,

Appellee,

v.

NOEL HERNÁNDEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lipez, Circuit Judge,
Gibson* and Stahl, Senior Circuit Judges.

Susan E. Taylor, by Appointment of the Court, for appellant.
Randall E. Kromm, Assistant U.S. Attorney, with whom Michael
J. Sullivan, United States Attorney, was on brief for appellee.

June 15, 2007

*Of the Eighth Circuit, sitting by designation.

**STAHL**, **Senior Circuit Judge**.  Appellant Noel Hernandez raises four objections to the conduct of his criminal trial. Finding no error, we affirm his conviction.

## I. Background

Hernandez was convicted after a jury trial of conspiracy to import heroin, in violation of 21 U.S.C. §§ 952(a) and 963; and importation of heroin, in violation of 21 U.S.C. § 952(a). Hernandez was arrested at Boston's Logan Airport on July 13, 2004, after Customs agents connected him to two arriving passengers, Francisco Navarro and Cesar Mercedes, who were discovered to have concealed 874 grams of heroin in their clothing and stomachs. During questioning at the airport by Customs agents, Navarro revealed that he and Mercedes were to be picked up at the airport by a "Noel Hernandez," and gave the agents his contact's cell phone number.  An agent called the number and told the person who answered the phone that he was "with his friend" and asked him to come to Logan's Terminal E.  When a man who fit Navarro's description of Hernandez arrived at Terminal E, the agents called the phone number again and observed the man answer his cell phone. The agents then detained the man, who they determined was the appellant, Hernandez.

After he was detained, Hernandez told the agents that he was at the airport to pick up an adult and two children for a friend named Medina.  Following his arrest, agents found in

Hernandez's possession an envelope containing the travel itinerary for Navarro and Mercedes, and printed receipts for their airline tickets.

Navarro and Mercedes pled guilty and testified for the government at Hernandez's trial. Navarro testified that Hernandez had lent him $7,000, after he (Navarro) became incapacitated and could not work. When Navarro was unable to repay the loan, Hernandez allegedly invited Navarro to meet with him in New York City at Hernandez's expense, on June 25, 2004. At the meeting, according to Navarro's account, Hernandez requested that Navarro repay the debt by transporting drugs into the United States. Navarro eventually agreed to the plan, and asked if his friend, Mercedes, who also faced financial problems, could participate as well. Neither Navarro nor Mercedes knew what kind of drugs they were transporting, though they apparently both suspected it was cocaine rather than heroin.

Hernandez was convicted by a jury of importation and conspiracy to import heroin, and was sentenced by the district court to concurrent 132-month sentences for each count, as well as four years' supervised release.

## II. Discussion

Hernandez raises four objections to the conduct of his trial. We address each below.

## A. Constructive Amendment

Hernandez argues that the district court constructively amended the indictment by stating in its original jury instruction that the jury could convict on the importation count based on evidence of heroin or cocaine, whereas Hernandez's indictment premised the importation count only on heroin. We review a preserved claim[1] of constructive amendment de novo, see United States v. Mitov, 460 F.3d 901, 906 (7th Cir. 2006), and ask whether "the charging terms of the indictment [were] altered, either literally or in effect, by prosecution or court after the grand jury has last passed upon them," United States v. DeCicco, 439 F.3d 36, 43 (1st Cir. 2006). "A constructive amendment is considered prejudicial per se and grounds for reversal of a conviction." Id.

While the district court, in its first set of instructions, stated that the importation count could be premised on heroin or cocaine, the court clarified this statement in its subsequent reinstruction of the jury:

> Note the change from yesterday. Yesterday I mentioned another drug. Cocaine. Please strike that out. And the reason is obvious. There's no evidence about cocaine here at all. Don't start speculating about that. There's no evidence in this case about cocaine.

---

[1]The government argues that we should employ a plain error review as to this issue, because Hernandez allegedly did not preserve his objection. However, because Hernandez's claim fails under the more searching de novo standard, we need not decide whether Hernandez indeed preserved his objection.

-4-

> There's no evidence in this case about any drug but heroin.

However, Hernandez argues that the district court's reinstruction, quoted above, referred only to the conspiracy count, meaning the court did not correct its instruction that the importation count could be based on either cocaine or heroin. Hernandez is correct that the district court's statement was made as part of a larger discussion of the conspiracy count. However, the court's statement was, on its face, not limited to the conspiracy count, and the statement's sweeping language made it quite clear to the jury that the only drug it should consider, in regards to either count, was heroin.

As we have previously said, "A primary objective of the rule against constructive amendment of indictments is to ensure defendants have notice of the charges they must defend against." United States v. Dubon-Otero, 292 F.3d 1, 5 (1st Cir. 2002). In this case, Hernandez was on notice, through the indictment, that his charges were related to heroin importation, and the district court's reinstruction made it clear to the jury that heroin was the only drug it should consider in reaching its verdict. Therefore, though the district court's initial instructions created some unnecessary confusion, the reinstruction ensured that Hernandez would not be convicted of a crime for which he had not received

-5-

notice.  Thus, we hold that no constructive amendment occurred here.

## B. Reference to the "Meeting in New York"

During a reinstruction of the jury, the district court charged the jurors regarding the conspiracy count as follows:

> To prove conspiracy the government must prove beyond a reasonable doubt that Mr. Hernandez and at least one other co-conspirator, if you think there was a conspiracy, one other co-conspirator--it may be Navarro, it could be an unnamed co-conspirator.  If you believe a meeting in New York took place.  You have to believe those things beyond a reasonable doubt.

Hernandez assigns error to the court's reference to the "meeting in New York" because it "drew the attention of the jury to a piece of hotly contested evidence, and provided the manner in which that evidence could be used."  This argument is without merit.  It is unquestioned that, when instructing a jury, a judge "may explain, comment upon and incorporate the evidence into the instructions in order to assist the jury to understand it in light of the applicable legal principles." United States v. Maguire, 918 F.2d 254, 268 (1st Cir. 1990).  In mentioning the alleged New York meeting, the judge here did no more than that.  He merely explained to the jury how such a meeting, if the jury believed beyond a reasonable doubt that it had occurred, would relate to the conspiracy charge.  Id. at 269 (finding no error where the court's "discussion of the evidence did not dictate to the jury the

-6-

conclusion the latter should make").  Therefore, we find no error.

**C. Cell Phone Evidence**

Hernandez also objects to the district court's admission into evidence of his cell phone records and testimony interpreting those records.  On the fifth day of the eight-day trial, the prosecution apparently discovered that cell phone records linked to Hernandez's phone, which had been produced in discovery, contained codes that could be used to identify the general location of the phone when it was in use.  The prosecution proposed to introduce the cell phone records and testimony from a cell phone company employee, who would explain that the codes revealed that the phone was used in the New York City area on the date that Navarro alleged that the New York meeting had occurred.  Over Hernandez's objection, the court admitted the evidence.

On appeal, Hernandez argues that the admission of the evidence constituted a prejudicial late disclosure under Brady v. Maryland, 373 U.S. 83, 87 (1963), and Giglio v. United States, 405 U.S. 150, 154-55 (1972), because he would have used a different strategy in cross-examining Navarro if he had known of the evidence suggesting his presence in New York on the date of the alleged meeting. We review the district court's decision to admit evidence for abuse of discretion.  See United States v. McGauley, 279 F.3d 62, 72 (1st Cir. 2002).

In Brady, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused . . . violates due process," regardless of the good or bad faith of the prosecution. 373 U.S. at 87. A Brady violation is found where there is evidence that is favorable to the accused, suppression of that evidence, and a showing of prejudice. See Strickler v. Greene, 527 U.S. 263, 281-82 (1999). In Giglio, the Supreme Court held that "nondisclosure of evidence affecting credibility falls within [the] general [Brady] rule." 405 U.S. at 154.

Hernandez's Brady/Giglio argument fails because the evidence he objects to was not "favorable to the accused, either because it is exculpatory, or because it is impeaching." Strickler, 527 U.S. at 281-82. Instead, the information was harmful to Hernandez's defense. Certainly the defendant was surprised by the government's new evidence. However, Hernandez has not alleged that the government was aware of the significance of the codes at an earlier time, or that it deliberately withheld the evidence until it would cause maximum harm to the defense. See United States v. Gilbert, 181 F.3d 152, 162 (1st Cir. 1999) (although defendant was "surprised" by testimony discovered by the prosecution on the eve of trial, "she was [not] ambushed by it, if we define ambush as the government deliberately laying a trap for her to walk into"). Indeed the only information before us is that the government alerted the defense and the court as soon as it

realized that the cell phone codes were significant. In addition, the evidence Hernandez complains of was within his ability to discover, just as it was within the government's, as both parties had access to the cell phone records. Id. Finally, even if we had some basis to doubt the prosecution's account of when it discovered the significance of the codes, the district court's decision to admit the evidence would not constitute an abuse of discretion if "any reasonable view of the evidence support[ed]" the decision. United States v. Watson, 76 F.3d 4, 6 (1st Cir. 1996). Therefore, we conclude that the district court did not abuse its discretion in admitting the cell phone records and the testimony regarding the codes contained therein.

## D. "Mere Presence" Instruction

Hernandez's final challenge is to the district court's alleged failure to instruct the jury as to "mere presence." Hernandez argues that, because his defense was that he had gone to the airport merely to pick up three people as a favor to his friend, he was entitled to an instruction that his mere presence at the airport was not sufficient alone to establish guilt. We need not determine whether Hernandez was entitled to such an instruction, as the court actually instructed the jury in this regard. In its initial set of instructions, the court said:

> Mr. Hernandez cannot . . . be found guilty
> simply because he came to the airport and it
> was at the airport that two other folks were
> trying to import heroin. . . . People are not

-9-

> guilty on the basis of association.  People
> are not guilty because they happened to be at
> a crime scene or have come to a crime scene.

Given this instruction, we fail to see any merit in appellant's argument.

### III. Conclusion

For the foregoing reasons, we **<u>affirm</u>** the appellant's conviction.