# United States Court of Appeals
## For the First Circuit

No. 09-2144

UNITED STATES OF AMERICA,

Appellee,

v.

JAMES BUNCHAN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Howard and Stahl, Circuit Judges,
and DiClerico,* District Judge.

Terrance J. McCarthy, for appellant.
Kelly Begg Lawrence, Assistant United States Attorney,
with whom Carmen M. Ortiz, United States Attorney, was on brief,
for appellee.

November 24, 2010

*Of the District of New Hampshire, sitting by designation.

**STAHL**, **Senior Circuit Judge**. Defendant-Appellant James Bunchan was convicted by a jury for use of a facility of interstate commerce in the commission of murder-for-hire and solicitation to commit a crime of violence. The case arose from Bunchan's efforts to hire someone to kill the people whom he expected to testify against him in a pending federal fraud prosecution. He now appeals his convictions and sentence, arguing that the district court constructively amended the indictment when it instructed the jury as to the solicitation offense, improperly instructed the jury on nullification, and imposed an unreasonable sentence of 300 months. We reject Bunchan's claims and affirm the district court.

## I. Facts and Background

This appeal follows a conviction, and thus we recount the facts in the light most favorable to the verdict. United States v. Mercado, 412 F.3d 243, 245 (1st Cir. 2005).

On November 21, 2005, Bunchan was arrested for and later charged with forty counts of conspiracy, mail fraud, and money laundering for his part in a pyramid scheme that stole nearly $20 million from more than five hundred people, mostly of Cambodian descent (the "fraud case"). In May 2006, while detained at the Plymouth County Correctional Facility awaiting trial, Bunchan asked David Augustin, a fellow inmate, whether he knew of anyone whom Bunchan could hire to murder one of the primary witnesses who was to testify for the government. Augustin advised the FBI of

-2-

Bunchan's overture and subsequently became a cooperating witness.

At the behest of the FBI, Augustin continued to discuss with Bunchan the murder-for-hire plot. During their conversations, two of which were audio and video recorded, Bunchan wrote out various lists of the people he sought to have killed. He also discussed the possibility of having Assistant U.S. Attorney Jack Pirozzolo, the prosecutor in Bunchan's fraud case, murdered. The FBI provided Augustin with the name, phone number, and address of an undercover police officer, "Jamal," who posed as a hit man for the operation, and Augustin relayed Jamal's contact information to Bunchan.

In July 2006, Bunchan wrote a letter to Jamal listing the twelve individuals to be murdered. The letter included the victims' names, their priority, their places of residence, and the amount of money Bunchan was willing to pay for the murder of each.[1] Bunchan sealed the envelope and placed it in the prison's outgoing mail. The FBI received the letter and conducted DNA and handwriting analysis that positively identified Bunchan as the author. It later alerted Bunchan that it was aware of the murder-for-hire scheme and warned him to stop pursuing further action.

In March 2007, a grand jury returned an indictment against Bunchan for: (1) use of a facility of interstate commerce in commission of murder-for-hire in violation of 18 U.S.C. § 1958,

_____

[1]Pirozzolo was not listed as a victim in this letter.

-3-

and (2) solicitation of a crime of violence in violation of 18 U.S.C. § 373.

Thereafter, Bunchan was tried on the forty charges in his fraud case. He was convicted of most of the offenses and sentenced to a term of 420 months imprisonment. In arriving at the sentence, the district court considered Bunchan's conduct as it related to the murder-for-hire charges then pending. This court upheld the convictions and sentence on appeal. United States v. Bunchan, 580 F.3d 66 (1st Cir. 2009).

Trial on the murder-for-hire charges commenced on April 27, 2009, and the jury found Bunchan guilty on both counts. The district court sentenced Bunchan to 300 months imprisonment, applying an upward departure of seven months pursuant to United States Sentencing Guideline § 5K2.0. The district court ordered the sentence to run consecutively to the fraud sentence, except that its first sixty months would run concurrently, to reflect the fraud sentence's accounting for the murder-for-hire conduct. This appeal followed.

## II. Analysis

Bunchan argues for a reversal of his convictions because: (1) the district court improperly instructed the jury as to the elements of the solicitation offense, thereby constructively amending the indictment; and (2) the district court improperly instructed the jury as to its power to nullify. He also asserts

-4-

that even if his convictions are upheld, the court should remand for resentencing because his 300-month sentence is unreasonable. We review each of these arguments in turn.

A. Constructive Amendment Claim

"A constructive amendment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecution or court after the grand jury has last passed upon them." United States v. Celestin, 612 F.3d 14, 24 (1st Cir. 2010) (quotations and citations omitted). A primary objective of the rule against constructive amendments is to ensure that the defendant has notice of the charges against him. United States v. Dubon-Otero, 292 F.3d 1, 5-6 (1st Cir. 2002). Plain error review applies to an unpreserved claim such as this, requiring: (1) an error; (2) that is plain; (3) that affected the defendant's substantial rights; and (4) that also seriously impaired the fairness, integrity, or public reputation of the judicial proceedings. United States v. Brandao, 539 F.3d 44, 57 (1st Cir. 2008); see also United States v. Olano, 507 U.S. 725, 732 (1993).

Bunchan argues that the district court constructively amended the indictment when it instructed the jury on the charge of solicitation to commit a crime of violence. He claims that the district court improperly instructed the jury that he was charged with "obstruction of justice," which was not within the indictment nor an element of the solicitation offense. Further, because there

-5-

are many "obstruction of justice" offenses, not all of which include an element of physical force, the instruction lowered the government's burden and created jury confusion.

The district court detailed the two elements of the solicitation offense to the jury, as follows:

> First, that Mr. Bunchan solicited, commanded, induced, or otherwise tried to persuade another person . . . to commit, what's called, a federal felony.
>
> Now, what's involved here is a little bit more complex, in the sense that the federal felony here is essentially Obstruction of Justice, and the means of Obstruction of Justice that the Government says were involved here was to kill witnesses.
>
> It's not directly Murder. It's Obstruction of Justice, but the means that are undertaken are to commit murder of those witnesses, so that they wouldn't be able to testify in the federal charge -- the federal trial -- that Mr. Bunchan was then facing.
>
> The second element the Government must prove is that the defendant's actions strongly indicated that he intended the other person . . . to commit the crime of Obstruction of Justice by Murder . . . .
>
> Well, I'll tell you, as a matter of law, that . . . Obstruction of Justice by Murder has, as part of its elements -- the use or attempted use or threatened use of physical force against the person or property of the witnesses in this case or the victims in this case.

These instructions did not charge Bunchan with obstruction of justice. Rather, they reviewed correctly the two elements of the charged solicitation offense: (1) that the

defendant had the intent for another to commit a felony that has as an element the use, attempted use, or threatened use of physical force against a person or property; and (2) that under circumstances strongly corroborative of that intent, the defendant solicited, commanded, induced, or otherwise endeavored to persuade the other person to commit the felony. See 18 U.S.C. § 373. To state the obvious, both elements necessarily include reference to an underlying violent felony. Here, that felony was obstruction of justice by means of killing witnesses who were to testify in Bunchan's fraud case.

The district court's description of the underlying felony -- the murdering of witnesses -- was consistent with that alleged in the indictment, demonstrating that Bunchan had notice. The indictment specifically charged Bunchan with solicitation of another "to kill victims and witnesses to prevent their attendance or testimony in an official proceeding, here a pending federal trial on fraud charges against the defendant, in violation of 18 U.S.C. § 1512(a)(1)(A)."

Bunchan is correct that the indictment did not use the term "obstruction of justice." The indictment did, however, both reference and incorporate 18 U.S.C. § 1512, the crime of tampering with a witness, victim, or an informant. That section of the United States Code is part of the obstruction of justice chapter and criminalizes the murder or attempted murder of another "with

intent to prevent the attendance or testimony of any person in an official proceeding." 18 U.S.C. § 1512(a)(1)(A). The district court's reference to "obstruction of justice" by means of killing witnesses, then, did not amend the indictment -- it elucidated it. See United States v. Hernandez, 490 F.3d 81, 84 (1st Cir. 2007).

Further, the district court's instructions did not lower the government's burden or create jury confusion as to which obstruction of justice offense was relevant. To be sure, "obstruction of justice" is an umbrella term that includes a wide array of offenses, not all of which are qualifying felonies for purposes of § 373. Here, however, the district court instructed the jury on the specific obstruction of justice felony at issue, the murdering of witnesses, and it properly told the jury that this felony includes as an element physical force against a person or property.

B. Jury Nullification Claim

Bunchan next argues, as a second unpreserved claim, that the district court improperly instructed the jury as to its power to nullify. After reviewing the role of jurors and the substantive law to be applied, the district court stated:

> So, Ladies and Gentlemen, let's turn to how you go about your business. As I told you, you don't have to follow my instructions anymore; in fact, that's the critical part of this. We expect you to, but, then, we send you into a room, we close the door, and we can't tell whether or not you're doing what we ask you to do.

-8-

Bunchan asserts that this passage encouraged the jury to abdicate its primary function of finding facts and applying them to the law to the detriment of his constitutional rights. Although an innovative argument indeed, considering that the weight of the evidence against Bunchan suggests that jury nullification, if anything, would have helped his cause, we find no error here.

A juror's duty is to apply the law as provided by the court. United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993). Neither the court nor counsel should encourage jurors to exercise their power to nullify. Id. Challenged instructions must be evaluated not in isolation, but in the context of the entire charge, and statements ambiguous in the abstract can be cured when read in conjunction with the whole. Jones v. United States, 527 U.S. 373, 391 (1999); United States v. Gonzalez, 570 F.3d 16, 21 (1st Cir. 2009).

Here, although the challenged passage is unusual when read in isolation, we find no error when considered in the context of the full jury charge.[2] Moments before the district court uttered the passage, it told the jury that "jury instructions are something you have to consider very, very carefully," and that "this is a case that has to be decided solely on the basis of the

_____

[2]We therefore need not reach the third prong of plain error review and determine whether this statement would result in per se prejudice as a structure error. Cf. Sullivan v. Louisiana, 508 U.S. 275 (1993) (finding improper instruction of reasonable doubt definition a structural error).

-9-

evidence that's actually presented here, in accordance with the law that I'm about to give you." The district court explained the presumption of innocence and stressed that the government was required to prove all of the elements of the charged offenses beyond a reasonable doubt. It told the jurors that they were the fact finders, and it then instructed them on the law of both of the offenses charged.

Following the challenged passage, the district court explained that "[w]e expect you to decide the case on the evidence and in light of the law, and what we're looking for is a collective judgment." It urged the jury to engage in "a rational discussion," and cautioned that "[e]ach juror in the end must decide this case for himself or herself, but . . . in the context of the evidence and the law that I've given you." Finally, the district court expressed its "hope . . . that the instructions are clear enough," and it directed the jury to put in writing any questions it had about them so that the court could respond.

Taken collectively, these instructions did not encourage jury nullification. Rather, they repeatedly directed the jury to heed the instructions and to apply the facts to the law in reaching a result in the case. Indeed, the lack of any objection by either party suggests that, in context, the challenged passage was not troubling. Cf. United States v. Marshall, 109 F.3d 94, 100 (1st Cir. 1997) (noting that contemporaneous objection is an "excellent

test" for determining whether a prosecutor improperly vouched during closing argument).[3]

C. Sentencing Claim

Lastly, we turn to Bunchan's claim that his 300-month sentence is substantively unreasonable.  Bunchan asserts that his sentence violates 18 U.S.C. § 3553(a) and is greater than necessary because his sentence in the fraud case already accounted for his murder-for-hire conduct.  He argues that the sentence therefore creates a disparity among similarly charged offenders and does not promote respect for the law.

We have already upheld the propriety of the 420-month fraud sentence and its consideration of the murder-for-hire scheme. Bunchan, 580 F.3d at 73 & n.11.  We now do the same for the 300-month sentence imposed for the murder-for-hire scheme.

The court reviews the substantive reasonableness of a sentence "under a deferential abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 51 (2007).  We consider the totality of the circumstances and give due deference to the district court. See id.; United States v. Wallace, 573 F.3d 82, 97 (1st Cir. 2009).

---

[3]We also question the extent to which the passage at issue would call to mind nullification.  Because the district court made the statement moments before deliberations began, the court may have simply meant to indicate that the jurors no longer needed to follow its earlier and often repeated instruction that cautioned against discussing the case prior to the close of the trial. Nonetheless, the district court could have been more circumspect with its choice of words.

A sentence will stand so long as there is "a plausible sentencing rationale and a defensible overall result."  Id. (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)).

Here, the district court carefully reviewed both Bunchan's uncontested guideline sentencing range ("GSR") of 235-293 months and the § 3553(a) factors, finding them to weigh in favor of a significant sentence.  It explained that Bunchan's offenses were serious and required a severe sentence because they posed institutional dangers to the legal system, unlike the typical murder-for-hire scheme.  It cannot be overlooked that one of the original victims was Pirozzolo, the prosecutor in the fraud case.  General deterrence also counseled for a significant sentence, and specific deterrence still had import despite Bunchan's age because the murder-for-hire conduct began while Bunchan was in prison.  With respect to penological impact, the district court noted Bunchan's need for medical treatment and the prison system's ability to provide the requisite care.

The district court next considered the issue of disparity.  It discussed at length its finding that the GSR was too low in view of the public nature of the crime, which was outside the heartland of a typical murder-for-hire plot.  The 300-month sentence was based on the combined statutory maximum penalties for

the two offenses,[4] and the upward departure was grounded in § 5K2.0 of the United States Sentencing Guidelines because the Guidelines did not adequately capture the institutional concerns this case raised.

With respect to Bunchan's specific claim that the district court failed to appreciate the fraud sentence's consideration of the murder-for-hire scheme, we find it unavailing. The district court invited both parties to provide guidance as to how it should consider the fraud sentence imposed.  The government offered in its memorandum and at sentencing that the conduct accounted for no more than sixty months of the fraud sentence. Bunchan never contested this figure, nor did he offer an alternative.  Because the murder-for-hire conduct was only one of seven independent factors considered in calculating Bunchan's fraud sentence, we find reasonable the district court's decision to have the first sixty months of Bunchan's 300-month sentence run concurrently with the fraud sentence.

### III. Conclusion

For the foregoing reasons, we <u>affirm</u> Bunchan's convictions and sentence.

<u>So ordered</u>.

---

[4]18 U.S.C. § 1958 carried a statutory maximum of 120 months, and 18 U.S.C. § 373 carried a statutory maximum of 180 months.

-13-