# United States Court of Appeals
## For the First Circuit

No. 09-2132

MATTHEW D. WEST,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez, Circuit Judge,
and Woodcock,* District Judge.

John P. Slattery, with whom Ronald A. Wysocki Attorney At Law, Inc. was on brief, for appellant.
Cynthia A. Young, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

January 26, 2011

*Of the District of Maine, sitting by designation.

**WOODCOCK, <u>District Judge</u>**.  Defendant-appellant Matthew West appeals from his conviction of two counts of intent to distribute and distribution of cocaine and his subsequent sentence as a career criminal to 180 months incarceration followed by 10 years of supervised release.  West's appeal is based upon claims of ineffective assistance of counsel, abuse of discretion in continuing the sentencing hearing, sentencing factor manipulation, and an unreasonable sentence.  We affirm.

## I.    FACTS

In 2005, the Boston Police Department (BPD) and the Federal Bureau of Investigation (FBI) investigated suspected criminal activity by BPD Officer Robert Pulido, including identity theft, theft of gift cards, the purchase and sale of illegal steroids, and the co-hosting with West of illegal parties at 24 Factory Street in Boston.  The FBI believed the parties involved an unlicensed strip club, the unlicensed sale of alcohol, prostitution, and illegal drug trafficking.

As part of their investigation, the FBI directed cooperating witness Troy Lozano to befriend West.  The two had met in June 2005 when West offered to assist Pulido and Lozano with their identity theft operation.  In November 2005, the FBI asked Lozano to speak to West about the parties and to ask him about procuring "party favors" — cocaine — supposedly for Lozano's cousins who planned to attend one of the parties.  West initially thought Lozano was

requesting prostitutes, but when Lozano stated "the other favors," West responded, "Powders?" West then offered to "network" the request and gave a price of $125 for an eight-ball (3.5 grams) of cocaine, saying that "some people will ask for 150, but . . . he's giving them to me for 125 apiece." Lozano later purchased two eight-balls from West for $250. Several weeks later, again at the direction of the FBI, Lozano asked to purchase four eight-balls, which West eventually sold to him for $500.

In September 2006, West was indicted for two counts of possession with intent to distribute and distribution of cocaine, a violation of 21 U.S.C. § 841(a). Before trial, the government notified West that, if West asserted an entrapment defense, the government would put forth evidence of his prior felony drug convictions: 1989 convictions in Cambridge, Massachusetts for possession of a Class B and a Class D substance with intent to distribute; and 1992 Virginia convictions on two counts of felony distribution of cocaine.

After a jury trial, during which the entrapment defense was not raised, West was found guilty on both counts. In its initial presentence report, the Probation Office classified West as a career offender by virtue of his 1992 Virginia convictions and a 2001 conviction in Roxbury, Massachusetts for assault and battery. A sentencing hearing was scheduled for September 24, 2007. On September 19, however, West moved in the Commonwealth of

Massachusetts district court to vacate the 2001 conviction for assault and battery. The motion was heard the morning of September 24 and granted the same day, leaving only the 1992 convictions to stand at West's federal sentencing, rendering career offender status inapplicable. With this change, the federal sentencing guidelines sentence dropped to 12 to 18 months from the 262 to 327 months for a career offender.

Just before the sentencing hearing, the government and the district court learned about the vacated conviction. Based on late notice, the government requested a continuance and the trial court granted its motion, rescheduling the sentencing hearing for October 10. In the interim, the government petitioned the Massachusetts Supreme Judicial Court to vacate the order vacating the 2001 conviction. Before the Supreme Judicial Court responded, the state district court judge, sua sponte, vacated her order and restored West's 2001 conviction.

At his October 10 sentencing hearing, West and the government agreed that the sentencing guidelines classified West — his 2001 conviction restored — as a career offender, and the guideline sentence returned to 262 to 327 months imprisonment. The district court sentenced West to 180 months imprisonment and 10 years supervised release. In so doing, the district judge observed that, although selling drugs was not West's primary business, he was a career offender. In a subsequent sentencing memorandum, the trial

judge characterized West as a "small-time hoodlum," but noted his involvement in "after-hours parties with drugs," which he described as a "veritable beehive of criminal activity," and "rife with prostitution."

## II. DISCUSSION

West raises four issues on appeal: (1) ineffective assistance of counsel, (2) continuation of West's sentencing hearing, (3) sentencing factor manipulation, and (4) imposition of an unreasonable sentence.

### A. Standard of Review

After his conviction and sentencing, West directed his trial counsel to file an appeal under 18 U.S.C. § 3742. Despite West's repeated urgings, West's counsel missed the appeal deadline provided by Federal Rule of Appellate Procedure 4(b). West later moved pro se for leave to file an untimely appeal. After initially denying the motion without prejudice, the trial court later granted West's motion upon learning about West's counsel's failure, and West filed a timely appeal within the newly allowed appeal period. We dismissed West's direct appeal as untimely and directed West to his remedies under 28 U.S.C. § 2255. West filed the § 2255 petition with the district court, which denied his motion. West appeals that denial.

The rather unusual travel of this case could present a procedural tangle, but at oral argument, the government sensibly

waived any objection to our consideration of all of West's issues as though on direct appeal, regardless of how they actually arrived here. This seems to us appropriate, especially since parsing through varying standards of review and differentiating between waived and preserved issues would make no difference; the result by any reckoning is the same.

### B. Ineffective Assistance of Counsel

West's claim of ineffective assistance of counsel is based on his trial lawyer's refusal to accede to his demand to raise the entrapment defense during his trial and his counsel's failure to timely file an appeal of his conviction and sentence. Claimed violations of the Sixth Amendment right to effective representation of counsel require a showing that (1) counsel's performance fell below an objective standard of reasonableness, and (2) the deficient performance resulted in prejudice to the applicant. Strickland v. Washington, 466 U.S. 668, 687 (1984); Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010).

As we recently observed, in Strickland, the Supreme Court directed the courts to indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and [the defendant] must overcome the presumption that the challenged action might be considered sound strategy." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) (quoting Strickland, 466 U.S. at 689) (internal punctuation and citation omitted). A

lawyer's representation is deficient under Strickland "only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." Id. (quoting Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006)). West cites two instances of prejudicial ineffective assistance of counsel: first, that his trial counsel failed or refused to present an entrapment defense; and second, that his trial counsel failed to file a timely appeal of his conviction and sentence.

Reviewing West's counsel's performance in light of Strickland and its progeny, this court cannot conclude that his decision not to pursue an entrapment defense was patently unreasonable. A successful entrapment defense requires proof by the defendant of two elements: "(1) government inducement of the accused to engage in criminal conduct, and (2) the accused's lack of predisposition to engage in such conduct." United States v. Rodriguez, 858 F.2d 809, 812 (1st Cir. 1988). On this second prong, had West's counsel offered an entrapment defense, the government would likely have responded by seeking to demonstrate West's predisposition to sell drugs by introducing his 1989 convictions for possession of cocaine and of marijuana with intent to distribute, and his 1992 conviction on two counts of cocaine distribution.

The introduction of such damaging evidence would have undercut West's entrapment defense. West's prior convictions related not only to selling illegal drugs generally but also to the specific

-7-

type of drug in this case — cocaine. West's own actions further doomed an entrapment defense; when asked by Lozano for "party favors," West quickly surmised that he meant cocaine, and he displayed a ready knowledge of current cocaine pricing, stating "some people will ask for 150, but . . . he's giving them to me for 125 apiece." The present-tense allusion to West's drug supplier suggested an ongoing relationship and provided an additional challenge to West's claim that his drug procurement was a government-induced, one-time event. This evidence, viewed in its totality, supports West's counsel's repeatedly stated belief in the ineffectiveness of an entrapment defense.

Defense counsel, faced with difficult strategic choices, struck a middle path: he avoided an entrapment defense that would likely have resulted in admission of West's prior convictions, but he put the surrounding circumstances before the jury by highlighting Lozano's cooperation with the FBI. We cannot say that this was an unreasonable litigation strategy or so ill-considered as to overcome the strong presumption of effective assistance. That his strategy failed demonstrates the strength of the government's case, not the weakness of counsel's performance.

As regards West's counsel's failure to file a timely direct appeal, because we are now considering West's arguments as though brought on direct appeal, West has suffered no prejudice as a result of his counsel's failure. See generally Strickland, 466

U.S. at 687 (stating that a successful ineffective assistance of counsel claim requires a showing of prejudice).

## C. Continuation of Sentencing Hearing

This circuit grants district courts "wide discretion to grant or deny a request for continuance." United States v. Fink, 499 F.3d 81, 89 (1st Cir. 2007); United States v. Saccoccia, 58 F.3d 754, 770 (1st Cir. 1995). The "great deference" shown to district courts is disturbed "only for a manifest abuse of discretion" where the district court "indulged a serious error of law or suffered a meaningful lapse of judgment, resulting in substantial prejudice to the movant." Saccoccia, 58 F.3d at 770. Our review of a grant or denial of a continuance is case-specific. United States v. Moore, 362 F.3d 129, 135 (1st Cir. 2004). We have previously held that, when considering an appeal from a denial of a continuance, we assess first, "the reasons contemporaneously presented in support of the request for the continuance," and give secondary consideration to:

> the amount of time needed for effective preparation, the amount of time actually available for preparation, the amount of time previously available for preparation and how assiduously the movant used that time, the extent to which the movant has contributed to his perceived predicament, the complexity of the case, the availability of assistance from other sources, the probable utility of a continuance, the extent of inconvenience to others (such as the court, the witnesses, and the opposing party) should a continuance ensue, and the likelihood of injustice

> or unfair prejudice attributable to the denial of a
> continuance.

Saccoccia, 58 F.3d at 770; accord United States v. Rodriguez-Leon,

402 F.3d 17, 27 (1st Cir. 2005); Moore, 362 F.3d at 135; United

States v. Brand, 80 F.3d 560, 564 (1st Cir. 1996). The same

considerations are relevant here, where we review the grant of a

continuance rather than its denial.

Our analysis is guided by our earlier ruling in United States

v. Fink, where we overturned a district court's denial of a

sentencing continuance that would have allowed the government time

to review whether a previous conviction marked the defendant as a

career offender. 499 F.3d at 83. In Fink, the government

requested additional time to review the sentencing implications of

a vacated prior conviction. Id. at 88-89. There, as here, the

last-minute vacatur by a state court resulted in significant

confusion as to the appropriate federal sentence, and prompted the

trial court to grant an eleven-day continuance. Id. However, in

Fink, the district court denied a subsequent request to continue.

Id. at 89. On appeal, we found the government's request for a

second continuance justifiable given its surprise at the vacatur,

and we ruled that the trial court's interest in an expeditious

sentencing did not outweigh the government's interest in a sentence

based on an accurate criminal history. Id. Concluding that the

court should have granted the government a continuance, we reversed and remanded the case.

This case echoes <u>Fink</u>. West's sentencing hearing was initially scheduled for September 24, 2007. It was delayed sixteen days until October 10 because the state court granted West's motion to vacate. The need for the continuance was largely of West's own making; West sought to vacate his 2001 conviction just five days before the sentencing hearing, and his motion was granted the morning of the sentencing, giving the government no more than several hours notice. In light of the timing of events, the government's request for additional time to review the vacatur strikes us as entirely appropriate.

The reasonableness of the request is further buttressed by the government's clearly articulated reasons, listing precisely what steps it intended to take if the continuance were granted:

> So, what I would like to do is have an opportunity to inquire of the Commonwealth, one, did you know about this, two, is this the proper basis for vacating a prior conviction, and three, are you intending to go forward with a new trial on Mr. West in the state court . . . .

<u>See</u> <u>id.</u> ("We find the government's request for time . . . justifiable . . . especially since it informed the district court precisely what steps it would take if the continuance were granted, i.e., that it would consult directly with the Massachusetts state court for clarification of the issue."). Faced with a last-minute

vacatur and a request for a brief continuance with a clearly defined purpose, the district judge's grant was entirely justifiable and well within his discretion. In granting a continuance, the district court did what we thought the district court should have done in Fink. It committed no error.

We are also mindful of Federal Rule of Criminal Procedure 32(b)(1), which provides that a sentence be imposed "without unnecessary delay." See, e.g., United States v. Espinola, 242 Fed. Appx. 709, 711 (1st Cir. 2007) ("Requests for continuances of sentencing are disfavored given the district court's obligation to 'impose sentence without unnecessary delay.'"), vacated on other grounds, 552 U.S. 1240 (2008). Nonetheless, we are persuaded that the circumstances of this case fall squarely within the ambit of Rule 32(b)(2), which allows for a change to any of Rule 32's time limits "for good cause." See Brackett v. United States, 270 F.3d 60, 70 (1st Cir. 2001) (citing Rule 32's "good cause" provision in explaining that a federal judge could continue a sentencing hearing "when there are pending state proceedings to vacate state convictions instituted before the federal sentence is imposed"), abrogated on other grounds by Johnson v. United States, 544 U.S. 294 (2005); cf. United States v. Casas, 425 F.3d 23, 36 (1st Cir. 2005) (holding that a thirty-one month delay between conviction and sentencing was "not without good reason" and so did not infringe upon the defendants' Sixth Amendment rights to a speedy trial).

-12-

Furthermore, even assuming arguendo that the district judge abused his discretion in granting the continuance, we perceive no prejudice as a result of the continuance. Although West had been in custody for over a year, discounting career offender status, West was facing a guidelines sentence of twelve to eighteen months. A two- or three-week continuance would not likely have resulted in any additional time in prison. That West ultimately faced a guideline sentence of at least 262 months was not the result of the continuance, but of the actions of the Commonwealth of Massachusetts judiciary and the calculation of an otherwise uncontested sentencing guideline range. The government's stated purpose for the continuance was to sort out irregularities with the vacatur, including its validity, and the district court granted the continuance on this basis. Neither we nor the trial court find a valid distinction between West's attempt to vacate his earlier conviction and the government's attempt to vacate the vacatur.

D. **Sentencing Factor Manipulation**

Sentencing factor manipulation occurs when "the government 'improperly enlarges the scope or scale of a crime' to secure a longer sentence than would otherwise obtain." United States v. DePierre, 599 F.3d 25, 28-29 (1st Cir. 2010) (quoting United States v. Vasco, 564 F.3d 12, 24 (1st Cir. 2009)) (internal brackets omitted). "[I]mpropriety is the main focus." Id. at 29. A finding of manipulation allows imposition of a reduced sentence as

an equitable remedy to the government's overreaching.  Id.; United States v. Sanchez-Berrios, 424 F.3d 65, 78 (1st Cir. 2005); United States v. Fontes, 415 F.3d 174, 180 (1st Cir. 2005).

The defendant bears the burden to prove sentencing factor manipulation by a preponderance of the evidence.  Fontes, 415 F.3d at 180.  "[T]he threshold is very high" and requires a showing of "extraordinary misconduct."  Id.; United States v. Richardson, 515 F.3d 74, 86 n.8 (1st Cir. 2008) (explaining that sentencing factor manipulation exists "only in an 'extreme and unusual case'"); United States v. Fanfan, 468 F.3d 7, 16 (1st Cir. 2006).  For example, the threshold would be met with a showing that government agents "overpowered the free will of the defendant and caused him to commit a more serious offense than he was predisposed to commit."  United States v. Villafane-Jimenez, 410 F.3d 74, 87 (1st Cir. 2005).  The focus of the inquiry is "primarily on the behavior and motives of the government," but includes the secondary consideration of the defendant's predisposition to commit the crimes charged.  United States v. Jaca-Nazario, 521 F.3d 50, 58 (1st Cir. 2008); accord Fanfan, 468 F.3d at 16 ("The question is whether the government's conduct was 'outrageous' or 'intolerable' and rose to the level of 'extraordinary misconduct.'" (quoting United States v. Montoya, 62 F.3d 1, 4 (1st Cir. 1995))).

We addressed the proper standard of review in Jaca-Nazario:

"The district court's fact findings on this issue, as on other fact questions, are subject to the clearly erroneous standard." [Montoya, 62 F.3d at 4]. Because this is such a fact-bound inquiry, we extend deference even to the district court's conclusion about whether or not the government has behaved outrageously or intolerably. Id. (stating that such a conclusion is "not lightly to be disregarded").

521 F.3d at 57. Applying this standard, we cannot say that the government's actions in this case were intolerable or indicative of extraordinary misconduct. Rather, the mere suggestion of the procurement of illegal drugs set West on his course. Although it was the government's informant that broached the subject of drugs in the abstract (noting that some of his friends would be looking for "party favors"), the informant had not yet asked West whether he could provide the drugs before West offered, of his own initiative, to "network" the drug procurement. The facts do not reveal any overreaching by the government. See Fanfan, 468 F.3d at 16. At most, the government afforded West the opportunity to commit the crime. See Fontes, 415 F.3d at 180 (explaining that "there is an element of manipulation in any sting operation" and for that reason, sentencing factor manipulation is reserved only for "extreme and unusual" cases). West's ready response to the informant's inquiry confirms that his actions were not the forced result of intolerable pressure. See id. at 182 (noting that "some assessment of a defendant's response to an invitation to crime may

-15-

be warranted" in considering a claim of sentencing factor manipulation).

While, as noted by the district judge, West's primary business was not the sale of drugs, his conduct showed his easy access to them and his willingness to deal in them. Further, West's intimate familiarity with current drug prices belies any claims of enticement or lack of predisposition. See United States v. Campusano, 556 F.3d 36, 40 (1st Cir. 2009) (rejecting a claim of sentencing factor manipulation where the defendants had not been enticed to "commit an offense to which they were not predisposed"). These facts, viewed in their totality, show West to have been an "unwary criminal who readily availed himself of the opportunity" afforded him by Lozano, rather than an "unwary innocent" pushed into criminality by the government. See Mathews v. United States, 485 U.S. 58, 63 (1988).

Moreover, the informant's request was within the scope of the BPD and FBI's investigation into the criminal activity conducted at the unlicensed parties hosted by Officer Pulido, including suspected drug use. See Jaca-Nazario, 521 F.3d at 58 ("[S]entencing entrapment does not occur unless law enforcement agents venture outside the scope of legitimate investigation and engage in extraordinary misconduct that improperly enlarges the scope or scale of the crime." (internal quotation marks omitted)). To the extent there is any disconnect between the specific

activities of which Officer Pulido was suspected and Lozano's request for drugs, it falls far short of the "extraordinary misconduct" necessary to sustain an allegation of sentencing factor manipulation. See Fontes, 415 F.3d at 181 (noting that this court has upheld a district court's denial of sentencing factor manipulation even where "'the agents' motives were mixed and not of crystalline purity,' where the defendant was otherwise 'legitimately targeted and the sting objectively reasonable in extent'" (quoting United States v. Egemonye, 62 F.3d 425, 428 (1st Cir. 1995))).

That the district court used the terminology of "entrapment" rather than "sentencing entrapment" or "sentencing factor manipulation" does not help West's cause. See United States v. De La Paz-Rentas, 613 F.3d 18, 29 (1st Cir. 2010). A defendant's predisposition is relevant both to a defense of entrapment at trial and a claim of sentencing factor manipulation. See DePierre, 599 F.3d at 29. The district judge's entrapment reference, therefore, is best regarded as legal shorthand for West's predisposition. In other words, West's counsel's inability to rebut the government's evidence of predisposition similarly doomed his assertion of sentencing factor manipulation. See Jaca-Nazario, 521 F.3d at 59 n.8 (noting that in a sentencing manipulation analysis "a finding that the defendant was predisposed to commit the crimes charged may overcome even a finding of improper motive" by the government); see

-17-

also, Mathews, 485 U.S. at 63 (explaining that predisposition is "the principal element in the defense of entrapment").

We find no error by the district judge — either in his use of language or in his rejection of the sentencing factor manipulation argument.

### E.    Reasonableness of West's Sentence

West argues that the district court's sentence is unreasonable in light of 18 U.S.C. § 3553(a)(2), specifically, that the sentence was greater than necessary:  "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;(B) to afford adequate deterrence to criminal conduct;(C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."   The reasonableness of a sentence is reviewed "under a deferential abuse-of-discretion standard."  United States v. Bunchan, 626 F.3d 29, 35 (1st Cir. 2010) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).   "Our review of the district court's sentence for reasonableness is a two-step process.  We first review the sentence for procedural errors, then 'turn to the substantive reasonableness of the sentence actually imposed and review the sentence for abuse of discretion.'"  United States v. Rivera-Gonzalez, 626 F.3d 639,

646 (1st Cir. 2010) (quoting United States v. Politano, 522 F.3d 69, 73 (1st Cir. 2008)).

Turning to the former, the court considers whether the district judge made any procedural errors:

> such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range.

United States v. Gentles, 619 F.3d 75, 88 (1st Cir. 2010) (quoting Politano, 522 F.3d at 72). West's procedural challenge is based on the district judge's reliance upon facts allegedly unsupported by the record: first, that West ran a club that was "rife with prostitution"; and second, that West "ran after hours parties with drugs" and that the parties were a "veritable beehive of criminal activity."

After careful review, we conclude that the district judge's characterization of the parties, while descriptive, was firmly based upon record evidence. The record reflects that the parties involved the unlicensed sale of liquor and presence of prostitutes. West's own procurement of "party favors" to be used at the club confirms a general lawlessness surrounding the gatherings. Moreover, West's indifferent reaction to the request for party favors suggests that such lawlessness was commonplace and unremarkable. We are wary of second-guessing the first-hand

impressions of the trial judge, who had the benefit of directly observing the witnesses and evidence at trial. The district judge's assessment of these facts, including his description of the parties, was appropriate.

Turning to the substantive reasonableness of the sentence, we note that district courts are afforded "wide discretion" in reaching a sentencing decision. Rivera-Gonzalez, 626 F.3d at 647. "[T]he linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result." Id. (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)). "Where the district court has substantially complied with this protocol and has offered a plausible explication of its ultimate sentencing decision, we are quite respectful of that decision." Gentles, 619 F.3d at 89 (quoting United States v. Dixon, 449 F.3d 194, 204 (1st Cir. 2006)). Having found no procedural error, we review the substantive reasonableness of West's sentence "for abuse of discretion in light of all circumstances." United States v. Rosa-Carino, 615 F.3d 75, 82 (1st Cir. 2010).

West argues that his sentencing guideline classification as a "career offender" is overstated given the "small quantities of cocaine," his status as a "small-time hoodlum" whose primary business was not drug sales, and the thirteen-year gap between his Virginia drug conviction and the instant offense. The district court was correct in taking into account West's two prior

convictions.  See United States v. Brown, 621 F.3d 48, 54 n.5 (1st Cir. 2010) ("Prior convictions may be treated as sentencing factors even when they 'trigger[ ] an increase in the maximum permissive sentence' to which the defendant is exposed." (quoting Almendarez-Torres v. United States, 523 U.S. 224, 244 (1998))).

Here, the district judge did precisely what West contends he should have done:  he took into account the guideline range, the nature of the crime, and West's criminal history, and he imposed a markedly reduced sentence.  Rather than applying the guideline range mechanically, the judge duly considered both West's relatively low-level criminal status and the comparatively small drug quantities for which West was convicted, and he handed down a more lenient sentence than suggested by the guidelines.  To the extent the district judge concluded that West's criminal history generated a guideline range too harsh for West in light of the § 3553(a)(2) factors, the judge reduced his sentence from a guideline minimum of 262 months to 180 months.

In short, we find that the imposed sentence was reasonable.

## III. CONCLUSION

We affirm both West's conviction and his sentence.

So ordered.