# United States Court of Appeals
## For the First Circuit

No. 08-2142

UNITED STATES OF AMERICA,

Appellee,

v.

JOSE E. RIVERA-GONZALEZ, a/k/a Geno,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Lipez, Baldock[*] and Howard,
Circuit Judges.

Jedrick H. Burgos-Amador for appellant.
Germán A. Rieckehoff, Assistant United States Attorney, with
whom Rosa E. Rodríguez-Vélez, United States Attorney, and Nelson
Pérez-Sosa, Assistant United States Attorney, Chief, Appellate
Division, were on brief, for appellee.

December 1, 2010

[*]Of the Tenth Circuit, sitting by designation.

**HOWARD**, <u>Circuit Judge</u>. Appellant José E. Rivera-Gonzalez pled guilty to conspiring to distribute cocaine in a Coamo, Puerto Rico, housing project. Having three times moved unsuccessfully to withdraw his plea, he now challenges his conviction and sentence, contending that: (1) his plea was not knowing and voluntary because he relied on a contradictory and ambiguous plea agreement; (2) he received ineffective assistance of counsel because his attorney failed to identify and inform him of the plea agreement's inconsistencies; (3) the district court erred in concluding that Rivera-Gonzalez was on probation at the time of his crime and enhancing his sentence under section 4A1.1(d) of the Sentencing Guidelines; and (4) his sentence was unreasonable.

Concluding that the district court did not abuse its discretion in denying the appellant's motions to withdraw his guilty plea, and finding no error in the court's sentencing calculation, we affirm Rivera-Gonzalez's conviction and sentence. We also dismiss his ineffective assistance of counsel claim as procedurally flawed.

**I. Facts**

On November 9, 2005, Rivera-Gonzalez and fifteen co-defendants were indicted for conspiring to traffic narcotics in the Las Palmas Public Housing Project from around 1999 to 2005. Rivera-Gonzalez was charged with conspiracy to possess with intent

to distribute and distribution of controlled substances near a school or public housing project in violation of 21 U.S.C. §§ 841, 846 and 860.

Rivera-Gonzalez pled guilty on April 3, 2006, pursuant to a written plea agreement. The agreement stipulated a Sentencing Guidelines base offense level of 30 and a reduction of three levels based on Rivera-Gonzalez's acceptance of responsibility, yielding a guidelines sentencing range of seventy to eighty-seven months.[1] The agreement specified that no further enhancements or deductions would apply, although it expressly stated that it made no stipulation as to the defendant's Criminal History Category.

In exchange for Rivera-Gonzalez's plea, the government agreed to recommend the minimum sentence of seventy months or the lower end of the guidelines and to not seek any upward adjustments to his sentence. The agreement emphasized, however, that the district court judge did not have to accept this recommendation and could in fact sentence Rivera-Gonzalez up to the statutory maximum of forty years.

The plea agreement also incorporated the government's version of the statement of facts, which, by the terms of the agreement, Rivera-Gonzalez acknowledged were accurate and could be used by the sentencing judge in applying the Sentencing Guidelines

---

[1]The plea agreement contained a Sentencing Guidelines table that presented this calculation.

to his case.  The statement specified that Rivera-Gonzalez had participated in at least two drug distribution transactions in the Las Palmas Housing Project and noted that Rivera-Gonzalez had "possessed firearms in furtherance of the conspiracy."  The statement also confirmed  Rivera-Gonzalez's participation in the conspiracy from its beginning in or around 1999.[2]

The probation office relied on these details in the presentence investigation report (PSR) it prepared for the district court.  The PSR recommended a two-level enhancement because the offense was committed in a protected location, U.S.S.G. § 2D1.2(a)(1), and a two-level enhancement for Rivera-Gonzalez's use of dangerous weapons in the conspiracy, U.S.S.G. § 2D1.1(b)(1). The report also noted that Rivera-Gonzalez was on probation during the conspiracy and thus assigned him a Criminal History of II.[3]

---

[2]The relevant text of the stipulated facts read as follows:

> From on or about 1999 to November 9, 2005, the date of this Indictment, the defendant participated in the distribution of narcotic controlled substances, namely, heroin and cocaine, at the Las Palmas Public Housing Project in Coamo, Puerto Rico.  Specifically, the defendant was present or participated in at least two (2) drug distribution transactions, and also possessed firearms in furtherance of the conspiracy.

[3]Rivera-Gonzalez was convicted of two separate state drug offenses in 1998 and was placed on probation until May 1, 2003, for

The PSR's adjustments yielded a guidelines imprisonment range of 121 to 151 months, significantly higher than the range set forth in Rivera-Gonzalez's plea agreement.

Both the government and Rivera-Gonzalez objected to the proposed sentencing enhancements. In addition, Rivera-Gonzalez filed three motions to withdraw his plea, the first two pro se and the third with the help of his current counsel. Rivera-Gonzalez first argued that he was heavily sedated at the time of his change-of-plea hearing and that his trial attorney, Benjamin Ortiz, had coerced him into signing the plea agreement. In his second pro se motion, he contended that he did not understand the nature of the agreement because his attorney had not read it to him or explained its terms in Spanish. In his third motion, Rivera-Gonzalez claimed that the government deliberately drafted a contradictory and ambiguous plea agreement to induce him to plead guilty, and his attorney's participation in negotiating the plea constituted ineffective assistance of counsel.

The district court overruled the parties' objections to the sentencing report, determining that the agreed-upon statement of facts justified the enhancements. It also denied Rivera-Gonzalez's motions to withdraw his plea. The court found that Rivera-Gonzalez's statements at his change-of-plea hearing discredited his later allegations of ignorance, and it found no

_____

a total term of five years.

evidence that the government had acted deceitfully. Although it agreed that the stipulated facts were "patently irreconcilable with the sentence [the defendant] agreed [to] with the government," the court observed that it had no reason to suspect that Ortiz did not warn Rivera-Gonzalez of this fact. Moreover, the court noted that the defendant had expressly acknowledged his awareness that it could impose a harsher sentence and that such would not be a valid basis for withdrawal of his plea.

On July 31, 2008, the court adopted the PSR's findings and sentenced Rivera-Gonzalez to 121 months' imprisonment. This timely appeal followed.

## II. Analysis

Rivera-Gonzalez raises four issues on appeal. We address each in turn.[4]

---

[4]We note that the plea agreement that Rivera-Gonzalez signed contained a clause whereby Rivera-Gonzalez agreed to waive his right to appeal the judgment and sentence in his case if the district court accepted the plea and "sentence[d] him according to its terms and conditions." Rivera-Gonzalez argues that the waiver is unenforceable under the three-prong test enunciated in United States v. Teeter, 257 F.3d 14, 24–25 (1st Cir. 2001).

We need not consider the validity of the waiver, however, because the government does not seek to enforce it. See United States v. Carrasco-de-Jesús, 589 F.3d 22, 26 (1st Cir. 2009)("Where. . . the government's relinquishment of a known right relates to a waiver-of-appeal provision in a plea agreement, there is usually little reason to rescue the government from its election.").

## A. Denial of Motion to Withdraw Guilty Plea

Rivera-Gonzalez argues that the plea agreement's contradictory and ambiguous language led him to plead guilty without understanding the consequences of his plea, and that he would not have pled guilty had he known that facts included with his plea agreement would operate to enhance his sentence.

We review the decision to deny a motion to withdraw a guilty plea for abuse of discretion. United States v. Pulido, 566 F.3d 52, 57 (1st Cir. 2009). "The trial court's subsidiary findings of fact in connection with the plea-withdrawal motion are reviewed only for clear error." United States v. Martinez-Molina, 64 F.3d 719, 732 (1st Cir. 1995).

Although "[a] defendant does not have an automatic right to withdraw a guilty plea," United States v. Sousa, 468 F.3d 42, 46 (1st Cir. 2006), the court should permit the defendant's motion if the defendant establishes a "fair and just reason" for the withdrawal. Fed. R. Crim. P. 11(d)(2)(B). Factors to be included in determining whether the defendant has met this burden are whether the plea was voluntary, intelligent, knowing, and in compliance with Rule 11; the plausibility of the proffered reason for withdrawing the plea; the presence or absence of a claim of innocence; the timing of the defendant's motion; and possible prejudice to the government if the defendant is allowed to withdraw his plea. Id.

We conclude that the district court did not abuse its discretion by rejecting Rivera-Gonzalez's request to withdraw his guilty plea. The plea agreement expressly stated that the district court was not bound by the agreement's recommended sentencing range and could in fact sentence the defendant to the maximum term of forty years' imprisonment. Rivera-Gonzalez may not withdraw his plea merely because of the likelihood of a higher sentence. See United States v. Torres-Rosa, 209 F.3d 4, 9 (1st Cir. 2000)("[T]he fact that a defendant finds himself faced with a stiffer sentence than he had anticipated is not a fair and just reason for abandoning a guilty plea."); United States v. Mercedes Mercedes, 428 F.3d 355, 359 (1st Cir. 2005) (observing that "[c]ases holding to this effect are legion").

Rivera-Gonzalez lodges two arguments that he should be able to withdraw his plea, neither of which alters our analysis.

First, he claims that he is innocent of the conduct that prompted the district court to enhance his sentence. He argues that he was not on probation when he joined the drug conspiracy, that he did not traffic drugs in a protected location, and that he did not use a weapon in connection with the offense. But the statement of facts that Rivera-Gonzalez signed included this conduct, and at his change of plea hearing he explicitly confirmed that all of the facts were true. The district court did not err in presuming the validity of these assurances. See United States v.

Torres-Rosario, 447 F.3d 61, 67 (1st Cir. 2006) (holding that a court is "entitled to give weight to [the defendant's] assurances at his change of plea hearing" absent a "good reason for disregarding them"); cf. Blackledge v. Allison, 431 U.S. 63, 74 (1977)(stating that a defendant's "declarations in open court carry a strong presumption of verity").[5]

Rivera-Gonzalez also argues that the plea agreement which he signed was internally inconsistent in that the statement of facts supported a stiffer sentence than the agreement contemplated. Thus, he avers, his plea was not knowing and voluntary. We disagree. As we have already noted, the plea agreement put Rivera-Gonzalez on plain notice of his sentence exposure.

## B. Ineffective Assistance of Counsel

Rivera-Gonzalez blames his first attorney, as well as the government, for allowing him to sign the plea agreement.[6]

---

[5]To the extent that Rivera-Gonzalez's real source of discontent is that the government did not engage in "fact bargaining" to secure his plea, it fails. While the government could have reached such an agreement with the defendant, see United States v. Yeje-Cabrera, 430 F.3d 1, 20-30 (1st Cir. 2005), it was not obligated to do so.

[6]To be sure, the record suggests that the government has been Janus-faced in some of its dealings with the defendant. On the one hand, the government, through the plea agreement, suggested that Rivera-Gonzalez could expect a sentence within the range of seventy to eighty-seven months. On the other, it set forth facts in the agreement that plainly might lead the judge to impose a harsher sentence. But we also note that the government stood by the bargain that it had made and pressed for the agreed-upon lower

Ortiz, Rivera-Gonzalez asserts, should have known that the details provided in the agreement's stipulated facts section would lead the court to sentence him to a longer term than outlined by the plea agreement itself. Rivera-Gonzalez claims that Ortiz's role in advising him to sign the agreement constituted ineffective assistance of counsel.

To prevail on an ineffective assistance claim, the appellant must show that the trial attorney's representation was deficient and that this deficient performance prejudiced the defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984).

We generally will not address ineffective assistance claims on direct appeal, but rather require that they be raised collaterally. See United States v. Wyatt, 561 F.3d 49, 51 (1st Cir.), cert. denied, 129 S.Ct. 1690 (2009); United States v. Ofray-Campos, 534 F.3d 1, 34 (1st Cir. 2008); United States v. Hicks, 531 F.3d 49, 55 (1st Cir. 2008); United States v. Rodriquez, 457 F.3d 109, 117 (1st Cir. 2006). It is usually wiser to allow the district court to address an ineffective assistance claim in the first instance, because "an appellate court is ill-equipped to handle the fact-specific inquiry that such claims often require." Ofray-Campos, 534 F.3d at 34. Only when such scrutiny of the factual record is unnecessary because the attorney's ineffectiveness is "manifestly apparent from the record," Wyatt,

sentence.

561 F.3d at 52, will we consider ineffective assistance claims on direct appeal.  See id.

Rivera-Gonzalez urges us to find that his claim falls within this narrow exception, because his former attorney's advice to sign an "obvious contradictory and ambiguous plea agreement" was per se incompetent.  He refers us to a statement Ortiz made regarding the plea agreement at the hearing pursuant to his motion to withdraw as counsel:

> [I]n [Rivera's] mind when he wrote -- accepted the plea offer, in his mind there was level 27, Criminal History I, 70 months, that is true, and that was our understanding also.

Rivera-Gonzalez asserts that this statement reveals that Ortiz's understanding of the plea bargaining process was "simplistic and unrealistic" and that the attorney did not understand that the facts, as written, exposed his client to additional sentencing enhancements.

We cannot conclude, from this one line, that Ortiz's performance was necessarily constitutionally deficient, nor can we glean any further information from the record about the plea bargaining process, such as the expectations or strategies the parties brought to the negotiations.  Even if we could determine from the record before us that Ortiz's performance was deficient, we could not appropriately analyze whether the errors prejudiced either Rivera-Gonzalez's defense or his ability to obtain a more favorable arrangement.  See Ofray-Campos, 534 F.3d at 34 (noting

-11-

that "it is the trial court, rather than the appellate court, that is in the best position to assess whether [counsel's performance], if it was in fact constitutionally deficient, resulted in prejudice to [the appellant's] substantial rights, as required under Strickland"). We therefore dismiss Rivera-Gonzalez's ineffective assistance claim without prejudice to his reasserting them in a collateral proceeding under 28 U.S.C. § 2255.

        **C. Sentencing Calculation**

Rivera-Gonzalez next attacks the calculation of his sentence. Specifically, he challenges the district court's enhancement of his sentence under section 4A1.1(d) based on the court's determination that he was on probation when he joined the conspiracy.

Section 4A1.1(d) instructs the district court to add two points to the defendant's Criminal History Category if the defendant was on probation at the time of the crime. Rivera-Gonzalez acknowledges that he was on probation from May 1, 1998 to May 1, 2003. He argues, however, that the district court could not confirm that the drug conspiracy began before May 1, 2003 and thus could not conclude that Rivera-Gonzalez was on probation when he committed the offense.

Although we review a sentencing court's interpretation and application of the sentencing guidelines de novo, United States

-12-

v. Goodhue, 486 F.3d 52, 55 (1st Cir. 2007), where the defendant challenges the court's finding of facts, as here, our review is only for clear error.  See United States v. Villar, 586 F.3d 76, 88 (1st Cir. 2009).

Rivera-Gonzalez contends that the district court, in applying section 4A1.1(d), relied on information in the PSR from a cooperating witness that he engaged in activities in furtherance of the conspiracy as early as March 16, 2001.  He maintains that this information was unreliable and insists that the district court should have held an evidentiary hearing to assess the reliability of the witness's claim.[7]

We need not consider the reliability of the witness's account, however.  As we have noted above in dismissing his attempts to withdraw his guilty plea, the defendant himself admitted that his participation in the conspiracy began "from on or around 1999."[8]

---

[7]Rivera-Gonzalez also challenges the district court's enhancement of his sentence for possession of a dangerous weapon under section 2D1.1(b)(1).  He argues that he did not, as the PSR alleged, arm himself with a .38 caliber revolver in furtherance of the conspiracy.  This argument is easily disposed of, however, because the district court need not have relied on the PSR's findings in determining that the sentencing enhancement was appropriate. As we have already noted, Rivera-Gonzalez admitted in the plea agreement's statement of facts that he "possessed firearms in furtherance of the conspiracy," and the district court did not abuse its discretion in relying on this admission.

[8]We also reject the defendant's argument that the district court abused its discretion by refusing to order the Department of Correction to produce documentation certifying that Rivera-Gonzalez

-13-

Faced with the incontrovertible weight of his own words, Rivera-Gonzalez seeks to lessen their import to achieve his desired result. He contends that the phrase "from on or about 1999" is so vague that the district court could not rely on its accuracy. "Based on such language," he asserts, "any effort to determine whether [Rivera-Gonzalez's] participation began before or after the date of May 1, 2003 would be speculative."

We disagree. "From on or about 1999" may be approximate, but it is not so nebulous as to suggest that the conspiracy could have started at any time at all. The use of the phrase "on or about," as another circuit has noted, "merely serves to prevent any dickering over the small technicality of an exact date." United States v. McCown, 711 F.2d 1441, 1450 (9th Cir. 1983). The Ninth Circuit, in interpreting the phrase "from on or about June 17, 1981," found the words "on or about" opened the time frame by at most one or two days. Id. It would be unreasonable for us to agree with the defendant that "on or about 1999" might mean only "after May 1, 2003."

---

had finished his probation sentence satisfactorily. For 4A1.1(d) to apply, it mattered only that Rivera-Gonzalez was on probation at some time during the charged conspiracy. See U.S. Sentencing Guidelines Manual §4A1.1, cmt. n.4 (2007). ("Two points are added if the defendant committed any part of the instant offense . . . while under any criminal sentence.")(emphasis added). We agree with the district court that whether Rivera-Gonzalez in fact satisfactorily completed his probation was not critical to determining when he joined the charged conspiracy.

-14-

**D. Reasonableness of the Sentence**

Rivera-Gonzalez argues that even if the district court correctly applied section 4A1.1(d), his 121-month sentence is unreasonable. He claims the sentence is unfair because he received a longer sentence than any of his co-conspirators, including, in particular, the conspiracy's leaders. He also argues that the district court did not adequately explain the reasons for his sentence as required by 18 U.S.C. § 3553.

Our review of the district court's sentence for reasonableness is a two-step process. We first review the sentence for procedural errors,[9] then "turn to the substantive reasonableness of the sentence actually imposed and review the sentence for abuse of discretion." Politano, 522 F.3d at 73.

1. Adequacy of the Explanation

We first address Rivera-Gonzalez's procedural claim thatthe district court failed to adequately explain the reasons for his sentence. Rivera-Gonzalez raises this claim for the first time on appeal, and so our review is for plain error. See United States v. Manqual-Garcia, 505 F.3d 1, 15 (1st Cir. 2007).

---

[9]Such errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on erroneous facts, or failing to adequately explain a chosen sentence -- including an explanation for any deviation from the Guidelines range." United States v. Politano, 522 F.3d 69, 72 (1st Cir. 2008) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).

Section 3553(c) requires the sentencing judge "to state in open court the reasons for its imposition of a particular sentence." Where, as here, the defendant's guideline sentencing range exceeds twenty-four months, the judge must also state "the reason for imposing a sentence at a particular point within the [Guidelines Sentencing] range." 18 U.S.C. § 3553(c)(1). The court's explanation is adequate for purposes of § 3553(c)(1) if it "specifically identif[ies] some discrete aspect of the defendant's behavior and link[s] that aspect to the goals of sentencing." United States v. Vazquez-Molina, 389 F.3d 54, 58 (1st Cir. 2004), vacated on other grounds, 544 U.S. 946 (2005). Although the court's explanation must reflect "that the court considered the relevant § 3553(a) factors, the court need not address these factors one by one, in some sort of rote incantation when explicating its sentencing decision." United States v. Almenas, 553 F.3d 27, 36 (1st Cir. 2009) (internal quotation marks and citations omitted).

The district court's explanation of Rivera-Gonzalez's sentence was sufficient to satisfy § 3553(a)'s requirements. After making the guidelines calculations, but before pronouncing its ultimate sentence, the district court stated the following:

> Before the Court is a 42-year-old defendant with a high school education, no dependents. He has a history of drug use and prior criminal record. The defendant was actively involved in the drug trafficking conspiracy charged in the indictment.

-16-

> The guidelines, although advisory, adequately considers [sic] the nature of the offense, the history and characteristics of this defendant and his criminal record.
>
> Taking into consideration all of the factors that are set forth if [sic] 18 U.S. Code Section 3553, as well as the parties' sentencing recommendation set forth in their plea agreement, the Court finds that the lower end of the applicable guideline range is a sentence sufficient but not greater than necessary to meet the sentencing objectives of punishment and deterrence in this case.

The district court described the defendant's background, including his educational history and prior drug use, and referred to his criminal record. See 18 U.S.C. § 3553(a)(1)(directing the court to consider the "history and characteristics of the defendant" in imposing a sentence). The court added that a sentence at the lower end of the applicable guideline range would address the goals of punishment and deterrence, two of the objectives identified in 18 U.S.C. § 3553(a)(2). This explanation, though brief, was more detailed than others we have upheld under a plain error standard. See, e.g., Vasquez-Molina, 389 F.3d at 59 (upholding district court's explanation as adequate, where district court said only that "since the defendant is [a] second offender, a sentence in the middle of the guideline range will serve the objectives of punishment and deterrence").

Finding no procedural error, we shift our focus to the defendant's substantive claim.

2. <u>Substantive Reasonableness of the Sentence</u>

Rivera-Gonzalez claims that his sentence was unreasonable because at least eleven of his co-defendants, including the leaders of the drug conspiracy, were sentenced to lighter sentences than he was, ranging from forty-six to 108 months. In particular, he notes that Joel Moreno-Espada, the organization's leader, was sentenced to just seventy months' imprisonment.

We afford the district court "wide discretion" in sentencing decisions. <u>United States</u> v. <u>Marceau</u>, 554 F.3d 24, 33 (1st Cir. 2009). Ultimately, "the linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result." <u>United States</u> v. <u>Martin</u>, 520 F.3d 87, 96 (1st Cir. 2008).

Section 3553(a)(6) directs the district court to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." This section is "primarily aimed at national disparities, rather than those between co-defendants," <u>Marceau</u>, 554 F.3d at 33, and we have observed that a sentence within the Guidelines range, as was Rivera-Gonzalez's, "is likely to reflect the national standard." <u>United States</u> v. <u>Mueffelman</u>, 470 F.3d 33, 40-41 (1st Cir. 2006). Unless two "identically situated defendants" receive different sentences from the same judge, which may be a reason for concern, <u>United States</u> v. <u>Wallace</u>, 573 F.3d 82, 97 (1st Cir. 2009), our general rule of thumb is that a "defendant

is not entitled to a lighter sentence merely because his co-defendants received lighter sentences." Id.

Rivera-Gonzalez and his co-defendants were not identically situated, as our close review of each defendant's pre-sentence investigation report confirms. Some of his co-defendants were first-time offenders,[10] while others were convicted of possessing a smaller quantity of drugs. Still others received point reductions for the minor role that they played in the offense.[11] We thus conclude with little difficulty that "the district court properly exercised its informed discretion, while offering a plausible rationale and reaching a defensible result." Marceau, 554 F.3d at 34 (internal quotation marks omitted)(internal citations omitted). In short, we are satisfied that Rivera-Gonzalez's sentence was reasonable.

---

[10]In particular, Moreno Espada, whose sentence the defendant highlighted, was a first-time offender.

[11]In claiming that it was unreasonable for the district court to sentence him to a longer sentence than those of the conspiracy's leaders, Rivera-Gonzalez relies exclusively on a concurring opinion in United States v. Cirilo-Muñoz, 504 F.3d 106 (1st Cir. 2007). In that case, Judge Torruella observed that the scant evidence showed, at most, only that the defendant was an accessory after the fact, not an aider and abettor. Id. at 121–22 (Torruella, J., concurring). Here, we have no such concerns. Rivera-Gonzalez was not merely an accessory after the fact to the drug conspiracy, but, by his own admission, an active participant.

## III. Conclusion

For the reasons provided above, we affirm the conviction and sentence and dismiss without prejudice Rivera-Gonzalez's ineffective assistance claim.

**AFFIRMED**