# United States Court of Appeals
## For the First Circuit

No. 16-2398

UNITED STATES OF AMERICA,

Appellee,

v.

JOSE LUIS RIVERA-CRUZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Lynch and Lipez, Circuit Judges,
and Ponsor, District Judge.[*]

Merritt Schnipper, with whom Schnipper Hennessey was on brief, for appellant.
Francisco A. Besosa-Martínez, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

December 22, 2017

---

[*] Of the District of Massachusetts, sitting by designation.

**LYNCH**, **Circuit Judge**.  Police officers were searching a mall for a motorcyclist who had violated traffic laws when they were spotted by Jose Luis Rivera-Cruz.  Upon seeing the police officers, Rivera-Cruz took off, yelling "police!" into a walkie-talkie.  The officers recovered a loaded revolver with an obliterated serial number from a fanny pack that Rivera-Cruz had tossed onto the ground during his flight.

On the eve of trial, Rivera-Cruz pleaded guilty to being a felon in possession of a firearm.  The Sentencing Guidelines calculations in his plea agreement included a three-level reduction in offense level for acceptance of responsibility.  The plea agreement permitted Rivera-Cruz to argue for a sentence of 96 months, and the government to argue for a statutory-maximum sentence of 120 months.

The Guidelines calculations in the presentence investigation report ("PSR") also contained a three-level reduction for acceptance for responsibility.  But unlike the plea agreement, the PSR contained a four-level enhancement in offense level because the gun recovered from Rivera-Cruz had an obliterated serial number.  The resulting Guidelines sentencing range ("GSR") in the PSR was 110 to 137 months.  At sentencing, Rivera-Cruz argued for a 96-month sentence and the government argued for a 120-month sentence, consistent with the plea agreement.  The

- 2 -

district court ultimately adopted the PSR's calculations, and sentenced Rivera-Cruz to 120 months in prison.

On appeal, Rivera-Cruz argues that the plea agreement is invalid because it lacked consideration. As such, he argues that he should be entitled to withdraw his plea. Because we find that the government provided adequate consideration for Rivera-Cruz's guilty plea, we affirm.

## I. Background

A. Facts

On October 31, 2015, municipal police officers in Barceloneta, Puerto Rico were searching the Maranata Mall for an unidentified individual who had violated the Puerto Rico Transit Law by riding a motorcycle on a state road without any lights on, with his face covered, and without a helmet. Rivera-Cruz was in the mall's parking area during the search. Upon seeing the officers approaching, Rivera-Cruz fled, yelling "police!" into a walkie-talkie. The police gave chase and, during the pursuit, saw Rivera-Cruz toss a fanny pack onto the ground between some bushes and the main entrance of a nearby building. When the fanny pack hit the ground, a loaded Colt .38 caliber revolver with an obliterated serial number spilled out. An inquiry into Rivera-Cruz's criminal history revealed that he had been convicted of a number of crimes punishable by a term of imprisonment exceeding

one year, including, inter alia, robbery, attempted robbery, and attempted aggravated breaking and entering.

B.  District Court Proceedings

A grand jury indicted Rivera-Cruz, charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  Following unsuccessful plea negotiations, the district court scheduled Rivera-Cruz's trial to begin on Monday, April 11, 2016.  On Friday, April 8, 2016, Rivera-Cruz's attorney filed a motion stating that Rivera wished to request "a hearing where he [could] explain to the Court the reasons behind his dissatisfaction with his undersigned counsel."  Rivera-Cruz claimed that he was dissatisfied with defense counsel because the only plea offer defense counsel was able to extract from the government was "a recommendation for fifteen years as an armed career criminal," which Rivera-Cruz believed left him with "no choice but to exercise his right to a jury trial."

On April 10, 2016, the eve of trial, Rivera filed a motion to change his plea to guilty, pursuant to a plea agreement. The plea agreement's Guideline calculation indicated that Rivera-Cruz had a total offense level ("TOL") of twenty-one, which incorporated a base offense level of twenty-four under U.S.S.G. § 2K2.1(a)(1) and a three-level reduction for acceptance of responsibility per U.S.S.G. § 3E1.1.  The plea agreement stated

that the statutory maximum for the charged offense was ten years, under 18 U.S.C. § 924(a)(2).

With respect to sentencing, the plea agreement permitted Rivera-Cruz to argue for a sentence of ninety-six months of imprisonment, and the government to argue for a sentence of 120 months, regardless of Rivera-Cruz's criminal history category at the time of sentencing. The plea agreement also contained a waiver-of-appeal provision, under which Rivera-Cruz agreed to waive his appellate rights if the district court sentenced him according to the terms, conditions, and recommendations of the plea agreement.

A change-of-plea hearing was held on April 11, 2016. At the hearing, the district court reviewed the plea agreement with Rivera-Cruz and confirmed that Rivera-Cruz was satisfied with the services of defense counsel. After finding that Rivera-Cruz was competent to plead, that there was a factual basis for the elements of the charged crime, and that Rivera-Cruz offered his guilty plea "intelligently, willingly[,] and voluntarily," the district court accepted the plea.

Following the change-of-plea hearing, the U.S. Probation Officer filed a PSR. The PSR stated that Rivera-Cruz had a base offense level of 24, which was subject to a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 and a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(4)(B) because

the firearm seized from Rivera-Cruz had an obliterated serial number. The resulting TOL was 25. The PSR also determined that Rivera-Cruz had a criminal history category ("CHC") of VI due to his prior convictions. The PSR specified that given Rivera-Cruz's TOL of 25 and CHC of VI, the applicable GSR was 110-137 months' imprisonment.

Rivera-Cruz's sentencing hearing was held on October 25, 2016. Defense counsel began by addressing the disparity between sentence-recommendation range in the plea agreement (96 to 120 months) and the GSR calculated in the PSR (110 to 137 months) -- a difference that was caused by the obliterated-serial-number enhancement, which was included in the PSR's GSR calculation but not in the plea agreement's GSR calculation. Defense counsel explained that at the time the parties had entered into the plea agreement, both parties had "[known] of the potential for a four level enhancement due to the fact that the firearm had an obliterated serial number," but that "the parties . . . [had] understood that a guideline range of 96 months to 120 months [was] sufficient but not more th[a]n necessary." Defense counsel then argued for a sentence of 96 months. When the district asked the government to present its position, the government stated that it was "stand[ing] by the plea agreement" and argued for a sentence of 120 months.

After hearing from both parties, the district court adopted the GSR calculation from the PSR, including the four-level obliterated-serial-number enhancement, the three-level acceptance-of-responsibility reduction, and the finding that Rivera-Cruz had a criminal history category of VI. The district court noted that the applicable GSR was 110 to 137 months. After considering the sentencing factors under § 3553(a), the district court sentenced Rivera-Cruz to 120 months' imprisonment and three years of supervised release. Rivera-Cruz timely appealed.

## II. Analysis

On appeal, Rivera-Cruz argues that his plea agreement is invalid because he received no consideration for his guilty plea. He also claims that he is entitled to withdraw his plea because there is a reasonable probability that he would not have pleaded guilty had he known that his plea agreement lacked consideration.

The parties dispute the standard of review applicable to these claims. Rivera-Cruz advocates for de novo review, whereas the government argues that the appropriate standard of review is plain error because Rivera-Cruz is seeking to withdraw his plea for the first time on appeal. See United States v. Ramos-Mejía, 721 F.3d 12, 14 (1st Cir. 2013). We need not resolve this dispute, however, because Rivera-Cruz's claims fail under either standard.

A.   Consideration

In arguing that his plea agreement was unsupported by consideration, Rivera-Cruz points to (1) the fact that the government did not promise to reduce or dismiss any of its charges against him, (2) the fact that the government reserved the right to argue for a statutory-maximum sentence, and (3) the plea agreement's failure to stipulate the applicable criminal history category and offense level.

It is well-settled that we interpret plea agreements according to contract law principles.  United States v. Tanco-Pizarro, 873 F.3d 61, 65 (1st Cir. 2017) (quoting United States v. Marchena-Silvestre, 802 F.3d 196, 202 (1st Cir. 2015)).  As Rivera-Cruz correctly points out, we have recognized that "[a] plea agreement is a contract under which both parties give and receive consideration."  United States v. Conway, 81 F.3d 15, 17 (1st Cir. 1996).  Specifically, "[t]he government obtains a conviction that it otherwise might not have" and "[t]he defendant, correspondingly, receives less, or a chance at less, than he otherwise might have."  Id.

Despite his arguments to the contrary, we conclude that Rivera-Cruz received adequate consideration for entering into his plea agreement.  The plea agreement provided him with at least three separate benefits, each of which independently constituted sufficient consideration.  First, the government afforded Rivera-

Cruz a non-mandatory three-level reduction for acceptance of responsibility. Second, the government did not seek a four-level obliterated-serial-number enhancement. And third, the government forwent its pursuit of a sentence under the Armed Career Criminal Act ("ACCA").

### 1.    Acceptance-of-Responsibility Reduction

Under U.S.S.G. § 3E1.1(a), a defendant who "clearly demonstrates acceptance of responsibility for his offense" may receive a two-level reduction in his offense level. Under U.S.S.G. § 3E1.1(b), a defendant who qualifies for a reduction under subsection (a), and who has an offense level of at least 16 prior to the subsection (a) reduction, may receive an additional one-level reduction:

> upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently . . . .

Id. Rivera-Cruz argues that his three-point § 3E1.1 reduction was "available without action of either party at the discretion of probation," and that the government "did not take or refrain from taking, or promise to take or refrain from taking, any actions" relevant to the § 3E1.1 reduction. Not so. In the plea agreement, the government agreed to submit a GSR calculation that afforded

Rivera-Cruz a full three-point reduction under § 3E1.1, including the two-point deduction under subsection (a) and the one-point deduction under subsection (b).  The government was under no obligation to provide Rivera-Cruz with the latter reduction, given that Rivera-Cruz had refused to plead guilty until the eve of trial.  Cf. United States v. Mateo-Espejo, 426 F.3d 508, 511 (1st Cir. 2005) (finding no error in a district court's decision not to award a one-point reduction under § 3E1.1(b) because it properly viewed the defendant's "eleventh-hour decision to plead guilty . . . as failing to satisfy the applicable criterion"); United States v. Donovan, 996 F.2d 1343, 1345 (1st Cir. 1993) (per curiam) (affirming district court's determination that § 3E1.1(b) was inapplicable because "the plea agreement was reached only on the eve of the second trial date," and noting that the delay deprived the government of the benefits of avoiding trial preparation).  While it is true that the PSR also concluded that Rivera-Cruz should have been afforded a full three-point reduction under § 3E1.1, the government's voluntary agreement to submit the same three-point reduction, rather than a two-point reduction, certainly gave Rivera-Cruz a better "chance at less" in front of the district court.  Conway, 81 F.3d at 17.

### 2.   Obliterated-Serial-Number Enhancement

For similar reasons, the government's agreement not to include a four-point obliterated-serial-number enhancement under

U.S.S.G. § 2K2.1(b)(4)(B) in the plea agreement was sufficient consideration. Rivera-Cruz faults the government for "sa[ying] nothing" when it realized that the PSR's calculation of the offense level included the four-point enhancement. But Rivera-Cruz points to no authority imposing an affirmative obligation on the government to object to the enhancement at sentencing. In any case, the government's voluntary agreement not to include the § 2K2.1(b)(4)(B) enhancement in the plea agreement improved Rivera-Cruz's chances of obtaining a more lenient sentence, and accordingly constituted sufficient consideration for his plea.[1]

### 3. Decision Not to Pursue ACCA Sentence

The government also provided consideration in the form of its decision not to seek an ACCA sentence. Shortly before trial, Rivera-Cruz voiced his dissatisfaction with then-defense counsel's inability to extract any concessions from the government other than "a recommendation for fifteen years as an armed career

---

[1] In arguing that the plea agreement lacked consideration, Rivera-Cruz draws attention to the fact that the government reserved the right to advocate for a statutory-maximum sentence of 120 months, even though the highest possible sentence in the plea agreement's GSR calculations table was 96 months. It is true that based on (1) the TOL of twenty-one submitted in the plea agreement and (2) a criminal history category of VI (the highest), the applicable GSR is 77-96 months. However, had the government either (1) excluded the one-point § 3E1.1(b) deduction or (2) included the four-point obliterated-serial-number enhancement in the plea agreement's calculations, the applicable GSR would have also increased, thereby reducing Rivera-Cruz's chances of successfully arguing for a sentence below the statutory maximum.

criminal."  The government was under no obligation to drop its pursuit of an ACCA sentence.  Its decision to do so in the plea agreement -- a decision that lowered Rivera-Cruz's exposure from a statutory minimum of fifteen years, 18 U.S.C. § 924(e)(1), to a statutory maximum of ten years, 18 U.S.C. § 924(a)(2) -- certainly provided Rivera-Cruz with a "chance at less" during sentencing.[2] Conway, 81 F.3d at 17.  That alone is sufficient consideration.

B.    Ineffective Assistance of Counsel

Rivera-Cruz claims that he is entitled to withdraw his plea because there is a reasonable probability that he would not have pleaded guilty had he known that his plea agreement lacked consideration.  He asks us to view this claim "through the lens of ineffective assistance of counsel."  In the context of a guilty plea, a successful ineffective assistance of counsel claim requires a defendant to show that (1) "counsel's representation fell below an objective standard of reasonableness," Hill v. Lockhart, 474 U.S. 52, 57 (1985) (quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)); and (2) "there is a reasonable

---

[2]    At oral argument, defense counsel claimed for the first time that there was no possibility of an ACCA sentence given the nature of Rivera-Cruz's prior convictions.  He later elaborated on this point in a Rule 28(j) letter.  By failing to raise this argument in his briefing, however, Rivera-Cruz has waived it.  See United States v. Velez-Luciano, 814 F.3d 553, 563 (1st Cir.), cert. denied, 137 S. Ct. 192 (2016) (citation omitted).  Even if defense counsel's untimely ACCA argument had not been waived, it would be unavailing because there is ample evidence in the record of other consideration to support the plea agreement.

probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial," id. at 59.

We "generally will not address ineffective assistance on direct appeal, but rather require that they be raised collaterally." United States v. Neto, 659 F.3d 194, 203 (1st Cir. 2011) (quoting United States v. Rivera-González, 626 F.3d 639, 644 (1st Cir. 2010)). We consider ineffective assistance of counsel claims on direct appeal only where "fact-specific inquir[ies]" are "unnecessary because the attorney's ineffectiveness is 'manifestly apparent from the record.'" Rivera-González, 626 F.3d at 644 (first quoting United States v. Ofray-Campos, 534 F.3d 1, 34 (1st Cir. 2008), then quoting United States v. Wyatt, 561 F.3d 49, 52 (1st Cir. 2009)).

There is no evidence from the record indicating that Rivera-Cruz's attorney was manifestly ineffective. Rivera-Cruz's ineffective assistance of counsel claim dovetails with his consideration argument. In particular, the former claim stands on two related premises: (1) the plea agreement provided Rivera-Cruz with no benefits in exchange for the rights he surrendered, leaving him worse off than if he had pled guilty without a plea agreement; and (2) informing Rivera-Cruz of this alleged fact would have created a reasonable probability that he would have gone to trial instead of pleading guilty. Because we have already rejected the

first premise, the second one necessarily fails.[3]  That leaves Rivera-Cruz's ineffective assistance of counsel claim without a leg to stand on.

### III. **Conclusion**

For the reasons stated above, we _affirm_.

---

[3]     Moreover, Rivera-Cruz's claim that the plea agreement left him in a worse position than if he had pleaded guilty without a plea agreement is belied by the following facts in the record: (1) prior to his change of plea, Rivera-Cruz complained that he was dissatisfied with defense counsel for the sole reason that defense counsel was unable to convince the government to drop its pursuit of an ACCA sentence; (2) the government ultimately dropped its pursuit of an ACCA sentence in the plea agreement; and (3) after the prospect of an ACCA sentence was eliminated, Rivera-Cruz confirmed that he was satisfied with defense counsel's representation, both in the plea agreement itself and at the sentencing hearing.