# United States Court of Appeals
## For the First Circuit

No. 24-1343

WALTER ACEITUNO,

Petitioner, Appellee,

v.

UNITED STATES,

Respondent, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Aframe, Lynch, and Howard,
Circuit Judges.

Katherine C. Essington for appellee.

Lauren S. Zurier, Assistant United States Attorney, with whom
Zachary A. Cunha, United States Attorney, was on brief, for
appellant.

March 27, 2025

**LYNCH**, **Circuit Judge**.  The United States appeals from the grant of the petition for a writ of error coram nobis of Walter Aceituno, a citizen of Guatemala.  Aceituno's petition alleges that he is entitled to this "hen's-teeth rare" writ, United States v. George, 676 F.3d 249, 254 (1st Cir. 2012), because his attorneys, before he pled guilty in 2014 to drug-trafficking charges, had informed him he would be deported but did not go further to inform him that his guilty plea would result in a permanent ban on reentering the United States. Aceituno's petition does not contest that he was guilty of drug trafficking, that Immigration and Custom's Enforcement (ICE) informed him prior to his departure in 2014 that he was permanently barred from reentry, or that he illegally reentered in 2019.  Rather, his coram nobis argument is that he should be permitted to withdraw his 2014 criminal plea and vacate his criminal conviction based on the allegedly ineffective assistance of his attorney.

In granting the writ and allowing withdrawal of the plea, the district court committed errors of law and a clear error of fact and ventured beyond the bounds of its discretion.

**I.**

Aceituno is a Guatemalan citizen who became a lawful permanent resident of the United States in 1989 but lost that status in 2014.  He ran a barber shop in Pawtucket, Rhode Island. On April 18, 2013, Aceituno drove one of the barbers who rented

space in his shop, Geronimo Ramos, to a meeting in Warwick, Rhode Island. At the meeting, Aceituno and Ramos "discussed the purchase of two kilograms of cocaine at $28,000 per kilogram," as well as the future purchase of three additional kilograms. During these conversations, Aceituno inquired about the cocaine's purity. In fact, they were meeting with an undercover Drug Enforcement Agency (DEA) agent and a cooperating witness. When the discussion concluded, Aceituno and Ramos left the restaurant and travelled to Aceituno's barber shop to obtain the purchase money. After an hour passed without contact from the two men, the cooperating witness called Ramos to see what was causing the delay. Ramos informed the cooperating witness that he only had enough money for one kilogram of cocaine and that he was trying unsuccessfully to reach a friend who had money for the second kilogram. The cooperating witness told Ramos to return with the money he had. Ramos and Aceituno did so, meeting the cooperating witness and undercover DEA agent in the parking lot of the Warwick Mall. At that second meeting, Ramos showed the cooperating witness approximately $28,000 in a plastic bag. The cooperating witness then told Aceituno and Ramos that they would all go to Aceituno's barber shop in Pawtucket to make the exchange, at which time Aceituno and Ramos began to drive away. As they did, other members of the investigation team approached the Mercury Mountaineer Aceituno was driving and Aceituno attempted to drive away and flee

the scene, but he was stopped a short distance away. Aceituno and Ramos were both arrested, and Aceituno was charged with conspiracy to possess with intent to distribute cocaine and attempted possession of cocaine with intent to distribute.

Aceituno retained two lawyers in relation to his arrest: Thomas F. Connors, a criminal defense attorney, and Robert D. Watt, an immigration attorney. Attorney Watt had been helping the family of Aceituno's common-law wife with immigration matters since the 1980s and is a skilled immigration attorney. On January 7, 2014, after consulting with both his attorneys, Aceituno pled guilty, pursuant to an agreement, to conspiracy to possess with intent to distribute cocaine and attempt to possess with intent to distribute cocaine. As we describe below, both attorneys Connors and Watt provided Aceituno with advice before he entered his plea that he would certainly be deported after entering the plea.

Under the plea agreement, the government agreed to recommend a sentence at the low end of the guidelines range and a three-level reduction in Aceituno's offense level for the purpose of calculating that range, reducing the guidelines range imposed from 63-78 months of incarceration to 46-57 months. See U.S.S.G. ch. 5 pt. A. The agreement also stated that "Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States" and that "because Defendant is pleading guilty to conspiracy to

possess with intent to distribute cocaine and attempted possession with intent to distribute cocaine, removal is presumptively mandatory." The agreement further stated that "Defendant understands that no one, including his attorney or the district court, can predict to a certainty the effects of his conviction on his immigration status." In signing the plea agreement, Aceituno "nevertheless affirm[ed] that he want[ed] to plead guilty regardless of any immigration consequences that his plea may entail."

At his change-of-plea hearing, Aceituno stated that he understood that pleading guilty made it "quite likely and probable" that he would be deported after serving any period of incarceration. Aceituno never asked his lawyers whether he would be able to return to the United States after being deported, nor did they otherwise discuss the issue. Aceituno affirmed that he was "completely satisfied" with the representation he had received from his lawyers.

Attorneys Connors and Watt were both present for Aceituno's sentencing hearing on March 25, 2014. During that hearing, attorney Connors acknowledged that Aceituno would be deported as a result of his conviction and contended that this justified imposition of a below-guidelines sentence. Aceituno was sentenced to time served (approximately eleven months) and three

years of supervised release, despite the guidelines range of 46-57 months of incarceration.

Aceituno was taken into custody by Immigration and Customs Enforcement (ICE) shortly after sentencing and, again represented by attorney Watt, conceded before an Immigration Judge that his criminal conviction made him removable. Aceituno sought to avoid removal by arguing that he was eligible for withholding of removal and protection under the Convention Against Torture (CAT). The Immigration Judge found that Aceituno did not satisfy the relevant legal criteria and ordered him removed to Guatemala. The Board of Immigration Appeals affirmed the judgment and Aceituno was removed to Guatemala in January 2015. While in ICE detention awaiting removal, according to Aceituno, his fellow detainees told him that he would be able to reenter the United States five years after deportation. He was quickly informed that was not true when, in December 2014, Aceituno received from ICE a document called a "Warning to Alien Ordered Removed or Deported" which stated that, because of the nature of his conviction, he was permanently barred from reentering the United States. Aceituno refused to sign the Warning but did not attempt to contact his criminal defense attorney or his immigration lawyer before or after his removal to Guatemala in January 2015. He also did not seek to file a petition for post-conviction relief from his criminal conviction under 28 U.S.C. § 2255 at any point. Nor did he seek to withdraw his guilty

plea at any time before his coram nobis petition was filed in March 2023.

Aceituno remained in Guatemala until 2019. While in Guatemala, Aceituno did not consult with an attorney or otherwise attempt to challenge his conviction or reentry ban.

Notwithstanding his knowledge that he was permanently barred from reentry to this country, Aceituno illegally reentered the United States on November 15, 2019, by crossing the border on foot at San Ysidro, California and attempted to gain entry using his expired green card. Aceituno was detained by federal authorities and pled guilty to misdemeanor illegal entry in violation of 8 U.S.C. § 1325.

Aceituno sought asylum, withholding of removal, and relief from deportation under the CAT, alleging that he had been harassed and assaulted by police while in Guatemala. His applications were denied on November 27, 2020. Aceituno then filed a petition for review in the Ninth Circuit, and on August 11, 2021, Aceituno was released on bond from the immigration authorities and returned to Rhode Island while awaiting the Ninth Circuit's decision. The Ninth Circuit denied Aceituno's petition for review on August 23, 2023.

**The Petition for Writ of Coram Nobis**

In August 2020, Aceituno's common-law wife, Erika Larivee, wrote to the federal district court in Rhode Island which

had overseen his 2014 guilty plea in this case. Larivee claimed that Aceituno "was not . . . advised of or explained the actual repercussions or consequences of his plea agreement with respect to his immigration case" and requested that the district court vacate Aceituno's sentence. The district court appointed counsel to represent Aceituno on August 28, 2020. Appointed counsel filed a petition for writ of error coram nobis on March 22, 2023, approximately two-and-a-half years after being appointed and more than eight years after Aceituno was removed to Guatemala.

Aceituno's petition alleged that attorney Connors never advised Aceituno "that he would be permanently barred from applying for future re-entry into the United States." Aceituno claimed that, had he been so advised, "he would have refused to plead guilty and instead proceeded to trial."

The district court held an evidentiary hearing on February 7, 2024, at which both Aceituno and attorney Watt testified.[1] Attorney Watt testified as to the advice he gave, with the knowledge of attorney Connors, to Aceituno before Aceituno entered his plea. Attorney Watt testified that he believed the advice he gave Aceituno as to the risk of deportation "comport[ed] with his understanding of Padilla versus Kentucky" and that he had "provided Mr. Aceituno with competent advi[c]e despite

---

[1] Attorney Connors passed away in April 2016.

- 8 -

[Aceituno's] claims to the contrary."[2] Attorney Watt further testified that he had previously "filed disciplinary complaints against [him]self . . . when [he] felt that [he] had broken some particular duty to a client" but that he "did not in this case."

Attorney Watt never stated that he had failed to provide the effective representation Padilla required. Attorney Watt testified he was not asked by Aceituno at any time for a complete immigration consultation. Attorney Watt did state that "[t]here certainly is an argument to be made that a complete immigration consultation should include . . . advice . . . as to what's going to happen, five, ten, fifteen, twenty years down the road." But he tempered that statement by testifying that there was some uncertainty as to the inevitability of a permanent bar in the future:

> I kind of know there was no conversation about permanency, because like immigration law, if you know it well, there's always ways around anything and everything, theoretically. . . . There's a special program available within the Immigration Act itself. I have brought back people for temporary visits, aggravated felons, applying in advance, but I've brought people back.

The district court then granted Aceituno's petition for a writ of coram nobis on February 9, 2024. In its written order,

---

[2] Aceituno acknowledges through counsel that, although attorney Connors represented him during his criminal case and died prior to the February 7, 2024 evidentiary hearing, "Mr. Connors deferred to Mr. Watt as to any immigration" matter.

the district court found that, inter alia, "Mr. Aceituno acted reasonably in not seeking earlier relief considering the lengthy process involved in appealing his immigration status," and that "the judgment of conviction resulted from an error of fundamental character" because "Mr. Aceituno's attorney's representation fell below an objective standard of reasonableness because he did not inform" Aceituno that he would be permanently barred from reentering the United States. The district court further found that Aceituno's "own attorney testified, uncontradicted by any other evidence, that a reasonable attorney at the time should have informed Mr. Aceituno of the fact that his deportation from the country would be permanent" and that "but for the counsel's error, Mr. Aceituno would not have pleaded guilty." For the reasons described below, we hold these rulings were in error.

## II.

We review the district court's legal conclusions as to Aceituno's eligibility for coram nobis relief de novo and its findings of fact for clear error. United States v. Castro-Taveras, 841 F.3d 35, 38-39 (1st Cir. 2016). We review the district court's ultimate decision to grant the writ for abuse of discretion. See George, 676 F.3d at 255. "[A] material error of law always amounts to abuse of discretion." United States v. Vasquez-Landaver, 128 F.4th 358, 361 (1st Cir. 2025) (quoting United States v. Rodriguez, 919 F.3d 629, 634 (1st Cir. 2019)). Under the clear-error

standard, we will overturn the district court's "findings of fact or conclusions drawn therefrom" when "on the whole of the record, we form a strong, unyielding belief that a mistake has been made." United States v. Marquez, 280 F.3d 19, 26 (1st Cir. 2002) (quoting Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990)).

The writ of coram nobis is "a remedy of last resort for the correction of fundamental errors of fact or law." George, 676 F.3d at 253. To establish that coram nobis relief is warranted, a coram nobis petitioner must "explain his failure to seek earlier relief from the judgment, show that he continues to suffer significant collateral consequences from the judgment, and demonstrate that the judgment resulted from an error of the most fundamental character." Woodward v. United States, 905 F.3d 40, 43 (1st Cir. 2018) (quoting George, 676 F.3d at 254). Even when these three requirements are satisfied, the court may exercise its discretion to deny the petition if "the petitioner fails to show that 'justice demands the extraordinary balm of coram nobis relief.'" Castro-Taveras, 841 F.3d at 39 (quoting George, 676 F.3d at 255).

The district court committed errors of law and fact in finding Aceituno satisfied the first and third preconditions for

- 11 -

coram nobis relief.[3]  Aceituno failed to adequately explain his delay in seeking relief from his guilty plea and conviction. Further, Aceituno's attorneys did not provide constitutionally ineffective assistance by failing to inform him that his conviction would permanently prohibit him from entering the United States, and so there was no "error of the most fundamental character" warranting issuance of the writ.  George, 676 F.3d at 254; see also United States v. Morgan, 346 U.S. 502, 512 (1954) (writ of coram nobis may issue to address deprivation of counsel).  Even if Aceituno had satisfied all three preconditions, he also failed to show that justice required coram nobis relief be granted in this case.  We take each in turn.

**Aceituno's Delay in Filing His Petition was Unreasonable**

The district court found that Aceituno adequately explained his delay in challenging his conviction because it was

> clear that Mr. Aceituno was, at every moment in time, seeking a way to reunite with his American family.  Whether that was through plea negotiations, whether that was through immigration, whether that was through CAT, whether that was through asylum.  And always, once he found out that he might be permanently barred from coming back into this country, everything he did was an attempt to get that bar removed.

---

[3]    The parties do not dispute that Aceituno satisfies the second prong of the test.

- 12 -

The district court misapprehended the correct inquiry.  The correct inquiry was not about whether Aceituno had been seeking to reunite with his family, but whether it was reasonable for Aceituno to wait ten years from entry of his guilty plea to attempt to withdraw his plea and challenge his convictions.  The consideration of delay by a coram nobis petitioner inherently includes consideration of whether the petitioner has exercised diligence.  See Foont v. United States, 93 F.3d 76, 80-81 (2d Cir. 1996) ("[I]t is . . . important that reasonable diligence be required [of a coram nobis petitioner] in order that litigation may one day be at an end." (quoting Honeycutt v. Ward, 612 F.2d 36, 42 (2d Cir. 1979))).  Nor does the fact that Aceituno repeatedly applied for withholding of removal or CAT relief explain in any way why he did not during this period seek to attack his criminal conviction or seek to withdraw his plea.

Beyond that, the district court ignored the more than four years between June 2015 and November 2019 in which Aceituno acknowledges that he did nothing to further his purported goal of reentering the United States.  Aceituno learned from ICE no later than December 2014 that he would be permanently barred as a consequence of his conviction from reentering the United States.  Yet he took no steps to challenge that conviction though he could have done so.  Even assuming arguendo that Aceituno could not have learned of the permanent bar on reentry earlier despite the

availability of attorney Watt or others, he was then on federal supervised release and he could have challenged his conviction by filing a motion for post-conviction relief pursuant to 28 U.S.C. § 2255.[4]  He did not do so.  Nor did he take steps to withdraw his plea.[5]

The district court clearly erred when determining Aceituno had satisfied this precondition for coram nobis relief by excusing delay in light of his efforts in the immigration agency to avoid removal and then his removal afterward.  These efforts do not excuse his delay in challenging his criminal conviction because he could have pursued both avenues for relief from his criminal conviction and his guilty plea and immigration relief from removal at the same time.  See Ragbir v. United States, 950 F.3d 54, 64 (3d Cir. 2020) (pursuit of administrative remedy for removal did not excuse six-year delay in filing petition for coram nobis where

---

[4]  See Jackson v. Coalter, 337 F.3d 74, 78-79 (1st Cir. 2003) (noting that supervised probation is sufficient to satisfy the "in custody" requirement of federal habeas relief); United States v. Delhorno, 915 F.3d 449, 455 (7th Cir. 2019) (noting that the statute of limitations on § 2255 motions is one year from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence" (quoting 28 U.S.C. § 2255(f)(4))).

[5]  "A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(b).  "After the court imposes sentence . . . [a] plea may be set aside only on direct appeal or collateral attack."  Id. at 11(e).

petitioner "offer[ed] no acceptable explanation for why he did not seek both forms of relief concurrently"). Indeed, the factual record contradicts the assertion that "once he found out that he might be permanently barred from coming back into this country, everything he did was an attempt to get that bar removed." He did not seek to have removed the criminal conviction which caused the bar.

Nor does Aceituno's period in Guatemala from January 2015 to November 2019 explain his failure to act. Aceituno's criminal defense attorney did not pass away until April of 2016, yet Aceituno did not consult with attorney Connors or any other criminal attorney about any possible avenues for attacking his conviction or withdrawing his guilty plea despite having the resources available to do so.

Moreover, while not dispositive, the extraordinary length of Aceituno's delay given his thin rationale for it underscores its unreasonableness. See, e.g., Thornburg v. United States, 574 F.2d 33, 36-37 (1st Cir. 1978) (petition untimely after delay of slightly less than three years); United States v. Kroytor, 977 F.3d 957, 959, 960-61 (9th Cir. 2020) (petition untimely where defendant waited two years to file after learning that "his only chance to avoid removal was vacating his conviction"); Delhorno, 915 F.3d at 455 (petition untimely where defendant waited five years to file); Mendoza v. United States, 690 F.3d 157, 159-60 (3d

- 15 -

Cir. 2012) (petition untimely where defendant waited four years to file).

**The Immigration Advice Provided to Aceituno Complied with <u>Padilla</u>**

Where, as here, "the district court held an evidentiary hearing on an ineffective assistance of counsel claim, we review its factual conclusions for clear error and its legal conclusions de novo."[6]  <u>United States</u> v. <u>Manon</u>, 608 F.3d 126, 132 (1st Cir. 2010).

The district court committed legal error when it concluded that Aceituno's two counsel were required to go beyond informing Aceituno that his plea carried a risk of deportation but also were required to inform him that he would be permanently barred from reentering the United States.  In <u>Padilla</u> v. <u>Kentucky</u>, 559 U.S. 356 (2010), the Court held that "counsel must inform her client whether his plea carries a risk of <u>deportation</u>" to provide effective assistance.  <u>Id.</u> at 374 (emphasis added).  Aceituno was

_____

[6]  To establish ineffective assistance of counsel in the context of a guilty plea, Aceituno must show that "(1) 'counsel's representation fell below an objective standard of reasonableness'" and "(2) 'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" <u>United States</u> v. <u>Luis Rivera-Cruz</u>, 878 F.3d 404, 410 (1st Cir. 2017) (quoting <u>Hill</u> v. <u>Lockhart</u>, 474 U.S. 52, 57, 59 (1985)).  "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." <u>Quintanilla</u> v. <u>Marchilli</u>, 86 F.4th 1, 17 (1st Cir. 2023) (quoting <u>Harrington</u> v. <u>Richter</u>, 562 U.S. 86, 104 (2011)).

plainly given the advice Padilla required.  Indeed, he was advised not only of a risk of deportation but that he would in fact be deported.

Aceituno attempts to argue that Padilla requires attorneys to inform their defendant clients not just that a guilty plea will result in deportation, but also of any other adverse immigration consequences the guilty plea may have that are "clear and easily determined."  Not so.  The Court in Padilla "granted certiorari to decide whether, as a matter of federal law, Padilla's counsel had an obligation to advise him that the offense to which he was pleading guilty would result in his removal from this country," id. at 360 (emphasis added) (citation omitted), and its holding applies only to the risk of deportation, see, e.g., id. at 367 ("The weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation."); id. at 373 ("By bringing deportation consequences into th[e plea-bargaining] process, the defense and prosecution may well be able to reach agreements that better satisfy the interests of both parties."); see also United States v. Chan, 792 F.3d 1151, 1154 (9th Cir. 2015) (finding that Padilla's holding applies only to deportation).

The district court stated that attorney Watt "testified, uncontradicted by any other evidence, that a reasonable attorney at the time should have informed Mr. Aceituno of the fact that his

deportation from the country would be permanent."  The district court's characterization of attorney Watt's testimony was contradicted by the record and is clearly erroneous.  See United States v. Sawyer, 239 F.3d 31, 42-43 (1st Cir. 2001) (finding of fact was clear error where it was unsupported by the record). Attorney Watt testified unequivocally that he believed he had complied with his obligations under Padilla and explained why. The district court found attorney Watt to be credible, and it is not in dispute that attorney Connors deferred to attorney Watt as to any immigration advice.

**The Equities Weigh Against Issuance of the Writ**

Lastly, the district court abused its discretion in granting Aceituno's petition because the equities of this case do not justify issuance of the writ.  "[A] writ of error coram nobis should issue 'only under circumstances compelling such action to achieve justice.'"  George, 676 F.3d at 255 (quoting Morgan, 346 U.S. at 511).  "[I]t is not enough for a coram nobis petitioner to show that he can satisfy the elements of the tripartite test: he must also show that justice demands the extraordinary balm of coram nobis relief."  Id.  Aceituno has not made such a showing.  On the contrary, "when a defendant seeks to vacate a guilty-plea conviction by way of coram nobis, red flags accompany that request."  Id. at 258.  Indeed, Aceituno has repeatedly acknowledged, including at the 2024 evidentiary hearing, that he

- 18 -

did, in fact, commit the drug-trafficking offense.[7] "[I]t 'seems dubious that granting the writ w[ould] promote the interests of justice.'" Williams v. United States, 858 F.3d 708, 718 (1st Cir. 2017) (alteration in original) (quoting George, 676 F.3d at 260); see also Woodward, 905 F.3d at 43, 49 (affirming denial of coram nobis where petitioner's admitted conduct "flouted" related state laws). He has not explained how the interests of justice could possibly be served by allowing him to withdraw his plea some ten years after he entered this plea. The guilty plea he entered benefitted him greatly by reducing the applicable guidelines sentencing range. He said then he admitted his guilt "regardless of any immigration consequences." Nor has he explained why it would be equitable to force the government to retry the case some eleven years after the events. Finality would be undercut, not served, by issuance of the writ.

Equity also requires that the finality of "a great number of cases" not be put at risk by extending Padilla beyond its requirements. See United States v. Denedo, 556 U.S. 904, 911 (2009) ("To confine the use of coram nobis so that finality is not at risk in a great number of cases, we were careful . . . to limit the availability of the writ to 'extraordinary' cases presenting

_____

[7] The government correctly makes no argument that a condition of coram nobis relief is that the petitioner show actual innocence.

- 19 -

circumstances compelling its use 'to achieve justice.'" (quoting Morgan, 346 U.S. at 511)).

### III.

We reverse the district court's grant of the writ of coram nobis, quash the writ, and dismiss the petition.